**Exhibit**

**A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**VICTORIA PRICE**,
individually and on behalf of all
others similarly situated,

Plaintiff,

**v.**

**VITA LOCATORS, LLC**,

Defendant.

---

**INDIVIDUAL, COLLECTIVE AND CLASS ACTION COMPLAINT**
**AND JURY DEMAND**

---

Plaintiff Victoria Price ("Price"), individually and on behalf of all others similarly situated, by and through her attorneys at HKM Employment Attorneys, LLP and the Sawaya & Miller Law Firm, brings this Individual, Collective and Class Action Complaint and Jury Demand ("Complaint") against Defendant VITA Locators, LLC ("VITA," or "the Company"), and states as follows:

**NATURE OF THE CASE**

1.      Price alleges that VITA violated her rights, and the rights of other, similarly-situated employees ("Class Members") by failing to pay them wages, minimum wages, and overtime compensation in violation of Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Claim Act, C.R.S. § 8-4-101 et *seq.*, the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.*, the applicable Colorado Minimum Wage Orders, 7 C.C.R. 1103-1 (2017-2019), and the Colorado Overtime and Minimum Pay Standards Order, 7 C.C.R. 1103-1

(2020) (collectively, "Colorado Wage and Hour Law"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA").

2.     At all times relevant to this Complaint, VITA had a policy or practice of paying Price and the Class Members on a commission-only basis. As a result of this policy/ practice, VITA failed to pay Price and the Class Members wages, minimum wages, and overtime compensation for all of the hours that they worked.

3.     In addition, VITA violated Colorado Wage and Hour Law by generally failing to provide Price and the Class Members with compensated 10-minute rest periods. 7 C.C.R. 1103-1:8 (2017-19); 7 C.C.R. 1103-1, Rule 5 (2020).

4.     VITA also failed to pay Price wages that were due to her at the time of her termination, as required by Colorado Wage and Hour Law. *See* C.R.S. § 8-4-109.

5.     VITA's violations of Colorado Wage and Hour Law and the FLSA were willful.

6.     Price brings this case as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all Class Members who were not paid federal minimum wages and/or overtime compensation as required by the FLSA ("FLSA Collective").

7.     Price also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all Class Members who were not paid earned wages, Colorado minimum wages, and overtime compensation, or provided with compensated 10-minute rest periods required under Colorado Minimum Wage and Hour Law ("Rule 23 Class").

8.     Price seeks unpaid wages, minimum wages, overtime compensation, liquidated damages, statutory penalties, injunctive and declaratory relief, costs, reasonable attorney's fees,

and other appropriate relief for herself and the Class Members.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331, this action being brought under the FLSA, 29 U.S.C. § 201, *et seq*.

10.     This Court may exercise supplemental jurisdiction over Price's and the Class Members' state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## PARTIES

12.     Plaintiff, Victoria Price, is a resident of Colorado and former employee of VITA. Price worked as an apartment locator for VITA from September 4, 2017 through December 31, 2018.  Price signed an FLSA Consent Form to join this lawsuit.   *See* Plaintiff's FLSA Consent Form, Exhibit 1.

13.     Defendant, VITA Locators LLC is, and at all times relevant to this Complaint was, a Colorado limited liability company with a principal office at 2001 Lincoln Street, Apartment 1420, Denver, Colorado 80202.

14.     VITA is, and at all times relevant to this Complaint was, an "employer" within the meaning of the FLSA, 209 U.S.C. § 203(d).

15.     VITA is, and at all times relevant to this Complaint was, an "employer" of Price and the Class Members under Colorado Wage and Hour Law. C.R.S. § 8-4-101(6).

## GENERAL ALLEGATIONS

16.    VITA is in the business of matching renters with apartment complexes that have vacancies.  VITA makes money by charging landlords a percentage of renters' first month's rent.

17.    VITA is engaged in interstate commerce: the services it provides and the equipment it uses travel across state lines.

18.    On information and belief, VITA did business of $500,000.00 or more each year in 2017, 2018, and 2019.

19.    VITA employs individuals as apartment locators ("Locators") to match VITA's customers with apartment complexes by communicating with such customers on the phone and through e-mail. In addition, Locators are required to constantly post VITA's apartment listings on Craigslist.com on behalf of the Company.

20.    During the period from June 16, 2017 to the present ("Relevant Period"), VITA generally employed 14-16 Locators at any given time.

21.    VITA employed at least 25 Locators ("Class Members") during the Relevant Period.

22.    VITA generally required Price and the Class Members to work at its offices from 9:00 a.m. to 4:00 p.m. four days per week throughout most of Price's employment.

23.    Price and the Class Members were permitted to work from home one weekday each week, but were expected to work at least 9:00 a.m. to 4:00 p.m. on the day that they worked from home.

24.    On every or almost every day of the week, Price and the Class Members were required to follow up with VITA's customers, respond to text and e-mail messages from VITA,

4

and constantly post VITA's apartment listings on Craigslist.com.

25.     Price and the Class Members performed these duties prior to and after their regular 9:00 a.m. to 4:00 p.m. shifts each weekday, and on weekends.

26.     Price and the Class Members were usually not able to take 10-minute rest breaks on the days that they worked in the office. Nor did they generally have duty-free lunch breaks on those days.

27.     Price and the Class Members generally worked at least 50 hours per week throughout their respective periods of employment with VITA.

28.     The Locators sometimes worked more than 12 hours per day.

29.     At all times during the Relevant Period, VITA classified Price and the Class Members as 1099 employees and accordingly, Price and the Class Members were deprived of benefits to which employees are entitled, including but not limited to minimum wages, overtime, tax benefits, and other benefits.

30.     Price and the Class Members should have been classified as regular, W-2 employees because they were subject to the control of VITA and economically dependent on the Company.

31.     The Locators were required to report to work on fixed schedules, and to follow policies, practices, and procedures established by VITA.

32.     Price and the Class Members were required to ask customers standardized questions, and to fill in forms provided by VITA.

33.     VITA required Price and the Class Members to follow up with customers indefinitely until they rented an apartment listed by VITA.

5

34.     VITA also required Price and the Class Members to flood Craigslist with dozens of (often duplicative) advertisements on a daily basis.

35.     Each Locator had to spend hours flooding Craigslist for VITA every day.

36.     None of VITA's customers paid any money to Price and the Class Members.

37.     The rates of pay of Price and the Class Members were determined solely by VITA, without any input from Price and the Class Members.

38.     At all times during the Relevant Period, Price and the Class Members were engaged in VITA's primary, if not only, business.

39.     The work of Price and the Class Members was integral and essential to VITA, since the Company could not function without employees to match renters with apartment complexes, or without employees to flood Craigslist with VITA advertisements.

40.     Price and the Class Members generally worked on computers and other equipment provided by VITA.

41.     Price's and the Class Members' duties were supposed to be accomplished using software provided by the Company.

42.     Each Locator worked from VITA's e-mail server, from a company e-mail address that was issued by the Company.

43.     At all times during the Relevant Period, Price and the Class Members were economically dependent on VITA. VITA did not allow them to work for other employers during their periods of employment with the Company.

44.     Price and the Class Members were not employed on a temporary or piecemeal basis. They were required to work regular schedules and to perform all of their work duties as instructed

6

by the Company.

45.    At all times during the Relevant Period, VITA had a policy or practice of paying Locators on a commission-only basis. The Company did not pay Price and the Class Members an hourly wage rate, nor did it pay them overtime premiums for hours that they worked in excess of 40 per week and/or 12 per day, and/or 12 per shift.

46.    Also during the Relevant Period, VITA did not provide Price and the Class Members with compensated 10-minute rest periods, as required by Colorado Wage and Hour Law.

47.    During the first eight weeks of Price's employment, for example, Price worked at least 50 hours each week, for a total of at least 400 hours.

48.    Price was not paid anything at all during the first eight weeks of her employment, from September 4, 2017 to November 2, 2017, when she received a check for only $435.00.

49.    As another example, during November of 2018, Price worked at least 50 hours per week, totaling at least 200 hours of work. However, Price was not paid anything by VITA from November 3, 2018 to December 6, 2018.

50.    During the days that Price worked at VITA's offices, she did not receive compensated 10-minute breaks, and she observed that the other Locators did not receive such breaks, either.

51.    At the time her employment was terminated, Price was owed at least $16,217.00 in commissions, which she was never paid.

52.    Plaintiff sent a demand for payment of unpaid wages in compliance with C.R.S. § 8-4-109.  VITA is therefore on actual notice that Plaintiff and other similarly situated employees are due unpaid wages resulting from VITA's illegal pay policies and practices.

53.     This Complaint further puts VITA on constructive or implied notice that Plaintiff and all of VITA's similarly situated employees are also due unpaid wages resulting from VITA's illegal pay policies and practices.

54.     After 14 days lapsed following Plaintiff's demand for payment of unpaid wages, VITA failed to pay Plaintiff the demanded wages.  This allegation is subject to amendment should VITA in fact make a legal tender of what it owes Plaintiff and the similarly-situated employees.

55.     At all times relevant to this Complaint, VITA was or should have been aware of the requirements of the FLSA and Colorado Wage and Hour Law, but nevertheless failed to pay Price and the Class Members wages, minimum wages, and overtime compensation for all of the hours that they worked.

## FLSA COLLECTIVE ACTION ALLEGATIONS

56.     Price brings this action pursuant to 29 U.S.C. § 216(b) on her behalf of herself and the following FLSA collective:

> **All individuals who worked at VITA as Locators from June 16, 2017 to the present.**

("FLSA Collective").  Plaintiff reserves the right to amend this definition if necessary.

57.     Price and the FLSA Collective Members are similarly situated under the FLSA in that: (a) they all worked or work in similar positions as Locators; (b) they were all subject to the same policy or practice of commission-only pay; and (c) their claims are all based upon the same legal theories.

58.     Price has signed an FLSA Consent to join this action, which is filed herewith as Exhibit 1.

## RULE 23 CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own

behalf and on behalf of the following Class:

> **All individuals who worked at VITA as Locators from June 16, 2017 to
> the present.**

("Rule 23 Class"). Plaintiff reserves the right to amend this definition if necessary.

60.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class

Members in this case would be impractical.  Plaintiff reasonably estimates that there are at least

30 Rule 23 Class Members.

61.     There is a well-defined community of interest among the Rule 23 Class Members

and common questions of law and fact predominate in this action over any questions affecting

individual members of the Rule 23 Class. These common legal and factual questions, include, but

are not limited to, the following:

    a.  Whether VITA had a common policy or practice of paying Class Members on
a commission-only basis;

    b.  Whether, based on its policy or practice of paying Class Members on a
commission-only basis, VITA failed to pay Class Members the applicable
Colorado minimum wages;

    c.  Whether VITA had a common policy or practice of failing to pay Class
Members overtime compensation for hours they worked over 40 per week, 12
per day, and/or 12 per shift;

    d.  Whether VITA generally failed to authorize and permit compensated 10-minute
rest periods mandated by Colorado Wage and Hour Law;

e.  Whether VITA's policies and practices at issue in this case violated Colorado Wage and Hour Law;

f.  Whether VITA's violations of Colorado Wage and Hour Law were willful; and

g.  Whether the Class Members were harmed by VITA's violations of Colorado Wage and Hour Law.

62.    Plaintiff's claims are typical of those of the Rule 23 Class in that she is owed wages, minimum wages, and overtime compensation for VITA's violations of Colorado Wage and Hour Law. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class Members' claims and her legal theories are based on the same legal theories as all other Rule 23 Class Members.

63.    Plaintiff will fully and adequately protect the interests of the Rule 23 Class and she has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

64.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in multiple state and federal courts.

65.    This case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel know of no unusual difficulties in this case.

66. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.

67. Moreover, because VITA acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

#### 29 U.S.C. § 201, *et seq.*

##### *On behalf of Price and the FLSA Collective*

68. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

69. At all times relevant to this action, VITA was an "employer" and an enterprise engaged in commerce under 29 U.S.C. § 203(d) and 29 U.S.C. § 203(s) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

70. At all times relevant to this action, Price and the FLSA Collective Members were "employees" of VITA within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

71. Under the FLSA, VITA was required to pay Price and the FLSA Collective Members the federal minimum wage of $7.25 per hour for all of the hours that they worked at or under 40 per week. 29 U.S.C. § 206.

72. At all times during the Relevant Period, VITA had a policy or practice of paying Price and the FLSA Collective Members on a commission-only basis. As a result of this policy or practice, VITA did not pay the Locators the federal minimum wage for all of the hours that they

11

worked.

73. Because VITA was or should have been aware of the minimum wage requirements of the FLSA at all times during the Relevant Period, and nevertheless failed to pay Price and the FLSA Collective Members the federal minimum wage, VITA's violations of federal law were willful.

74. Based on VITA's violations of the FLSA, Price and the FLSA Collective Members are entitled to unpaid minimum wages, liquidated damages, reasonable attorney's fees, and the costs of this litigation.

## COUNT II

### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

### 29 U.S.C. § 201, *et seq.*

#### *On behalf of Price and the FLSA Collective*

75. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

76. The FLSA required VITA to pay its Locators overtime compensation at a rate of one and one-half times their regular rates of pay for all of the hours they worked over 40 per week during the Relevant Period. 29 U.S.C. § 207.

77. During the Relevant Period, Price and the FLSA Collective Members generally worked 50 hours or more per week.

78. At all times during the Relevant Period, VITA had a policy or practice of paying Price and the FLSA Collective Members on a commission-only basis. As a result of this policy or practice, VITA failed to pay the Locators a regular rate of pay, and did not pay them an overtime

12

premium of any kind for the hours they worked over 40 per week.

79.     Because VITA was or should have been aware of the overtime requirements of the FLSA at all times during the Relevant Period, and nevertheless failed to pay Price and the FLSA Collective Members overtime compensation, VITA's violations of federal law were willful.

80.     Based on VITA's violations of the FLSA, Price and the FLSA Collective Members are entitled to unpaid overtime compensation, liquidated damages, reasonable attorney's fees, and the costs of this litigation.

## COUNT III

### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF COLORADO WAGE AND HOUR LAW

**Colo. Const. Art. XVIII § 15**
**C.R.S. § 8-4-101 et seq.**
**C.R.S. § 8-6-101 et seq.**
**7 C.C.R. 1103-1 (2019)**
**7 C.C.R. 1103-1 (2020)**

*On behalf of Price and the Rule 23 Class*

81.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

82.     At all times during the Relevant Period, VITA was an "employer" covered by Colorado Wage and Hour Law. C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1:2 (2017-19); 7 C.C.R. 1103-1 (2020).

83.     At all times during the Relevant Period, Price and the Rule 23 Class Members were "employees" subject to the protections of Colorado Wage and Hour Law. C.R.S. § 8-4-101(5).

84.     Colorado Wage and Hour Law provides:

All wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments.

C.R.S. § 8-4-103.

85. Colorado Wage and Hour Law required VITA to pay its Locators minimum wage rates of: $9.30 per hour for hours worked in 2017; $10.20 per hour for hours worked in 2018; and $11.20 per hour for hours worked in 2019; and $12.00 per hour for hours worked in 2020. 7 C.C.R. 1103-1 (2017); 7 C.C.R. 1103-1 (2018); 7 C.C.R. 1103-1 (2019); 7 C.C.R. 1103-1 (2020).

86. Due to VITA's policy or practice of paying Locators on a commission-only basis, the Company did not pay Price and the Rule 23 Class Members minimum wages for all of the hours that they worked within 10 days of any regular pay period.

87. Because VITA was aware, or should have been aware, of the minimum wage requirements of Colorado Wage and Hour Law, but failed to pay Price and the Rule 23 Class Members minimum wages, the Company's violations of Colorado Wage and Hour Law were willful.

88. Price sent a demand to VITA on behalf of herself and the Rule 23 Class Members pursuant to C.R.S. § 8-4-109, but the Company refused to tender any money in response to the demand.

89. Based on VITA's violations of Colorado Wage and Hour Law, Defendant is liable for unpaid wages, minimum wages, statutory penalties, additional penalties for the willfulness of its actions, reasonable attorney's fees and costs.

14

## COUNT IV

### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF COLORADO WAGE AND HOUR LAW

**Colo. Const. Art. XVIII § 15**
**C.R.S. § 8-4-101 et seq.**
**C.R.S. § 8-6-101 et seq.**
**7 C.C.R. 1103-1 (2019)**
**7 C.C.R. 1103-1 (2020)**

***On behalf of Price and the Rule 23 Class***

90.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

91.     Price and the Rule 23 Class Members generally worked more than 40 hours per week during their respective periods of employment with VITA, and sometimes worked more than 12 hours per day.

92.     Colorado Wage and Hour Law required VITA to pay its Locators one and one-half times their regular rates of pay for all of the hours they worked in excess of 40 per week, 12 per day, and/or 12 per shift. 7 C.C.R. 1103-1, Rule 4 (2020); 7 C.C.R. 1103-1:4 (2017-19).

93.     Due to its policy of paying Locators on a commission-only basis, VITA failed to pay the Rule 23 Class Members a regular rate of pay, and did not pay them any kind of overtime premium for the hours they worked over 40 per week, 12 per day, and/or 12 per shift.

94.     Because VITA was aware, or should have been aware, of the overtime requirements of Colorado Wage and Hour Law, but failed to pay Price and the Rule 23 Class Members overtime compensation, the Company's violations of Colorado Wage and Hour Law were willful.

95.     Based on VITA's violations of Colorado Wage and Hour Law, Defendant is liable for unpaid overtime compensation, statutory penalties, additional penalties for the willfulness of

its actions, reasonable attorney's fees and costs.

**COUNT V**

**FAILURE TO PROVIDE REST PERIODS IN VIOLATION OF
COLORADO WAGE AND HOUR LAW**

**Colo. Const. Art. XVIII § 15
C.R.S. § 8-4-101 et seq.
C.R.S. § 8-6-101 et seq.
7 C.C.R. 1103-1 (2019)
7 C.C.R. 1103-1 (2020)**

*On behalf of Price and the Rule 23 Class*

96.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

97.    Colorado Wage and Hour Law required VITA to "authorize and permit" compensated 10-minute rest periods to each Locator for every period that the Locator worked over two hours. 7 C.C.R. 1103-1, Rule 5 (2020); 7 C.C.R. 1103-1:8 (2017-19).

98.    VITA violated Colorado Wage and Hour Law by generally failing to provide compensated 10-minute rest periods to Price and the Rule 23 Class Members.

99.    Because VITA was aware, or should have been aware, of the rest period requirements of Colorado Wage and Hour Law, but failed provide Price and the Rule 23 Class Members with rest periods, the Company's violations of Colorado Wage and Hour Law were willful.

100.    Based on VITA's violations of Colorado Wage and Hour Law, Defendant is liable for unpaid wages, minimum wages, statutory penalties, willfulness penalties, reasonable attorney's fees and costs.

## COUNT VI

### FAILURE TO PAY WAGES DUE IN VIOLATION
### COLORADO WAGE AND HOUR LAW

**C.R.S. § 8-4-101 et seq.**
**C.R.S. § 8-6-101 et seq.**
**7   C.C.R. 1103-1 (2019)**

*On behalf of Price individually*

101.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

102.     Price performed services as a Locator including providing information to customers that then used the information to rent apartment properties.

103.     VITA agreed to pay Price for these duties on a commission basis.

104.     VITA failed to pay Price commissions for the performance of these duties.

105.     VITA owes Price at least $16,217.00 in such commissions.

106.     These commissions were earned, vested and determinable during Price's employment, and thus VITA was obligated to pay these commissions to Price.

107.     VITA's failure to pay Price her owed commissions was willful.

108.     Plaintiff is therefore entitled to recover unpaid commissions, all applicable penalties, statutory damages, costs, and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the similarly situated FLSA Collective and Rule 23 Class, prays for the following relief:

A.     At the earliest possible time, the Court conditionally certify this case as a collective action pursuant to 29 U.S.C. § 216(b) and permit Plaintiff to notify all affected persons that an

17

action asserting FLSA claims has been filed, of the nature of the action, and of their right to join the suit;

B.      At the earliest possible time, the Court certify this case as a class action pursuant to Fed. R. Civ. P. 23 and permit Plaintiff to notify all affected persons that an action asserting Colorado Wage and Hour Law claims has been filed, of the nature of the action, and of their rights in regard to the suit;

C.      Declare that VITA violated the minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 207, as to Plaintiff and similarly situated persons who opt into this action; that VITA's violations were willful; that a three year statute of limitations applies to the FLSA Collective; that Plaintiff and other similarly situated persons are entitled to be paid overtime compensation for work in excess of 40 hours per week; and that the amount of unpaid time worked and overtime wages to which Plaintiff and others similarly situated are entitled is to be doubled as liquidated damages and awarded to them;

D.      Declare that VITA violated Colorado Wage and Hour Law by failing to pay regular wages, minimum wages, and overtime compensation to Plaintiff and the Rule 23 Class Members; that VITA failed to pay Plaintiff and Rule 23 Class Members their outstanding wages within 14 days of a written demand for same; and that VITA acted willfully in violating Colorado Wage and Hour Law;

E.      Grant Plaintiff, all FLSA Collective Members, and all Rule 23 Class Members a permanent injunction enjoining VITA, and all those acting in concert with VITA at VITA's direction, from engaging in the policies and practices which violate the FLSA and Colorado Wage and Hour Law;

F.    Award Plaintiff and other similarly situated persons who opt in to the FLSA Collective damages in the amount of minimum wages, overtime compensation, and any other amounts owed, to be proven at trial;

G.    Award Plaintiff and other similarly situated persons who opt in to the FLSA Collective liquidated damages in an amount equal to the unpaid minimum wages and overtime compensation shown to be owed pursuant to 29 U.S.C. § 216(b);

H.    Award Plaintiff and the Rule 23 Class Members the amount of unpaid wages, minimum wages, overtime compensation, and any other amounts owed due to VITA's policies and practices, according to proof at trial;

I.    Award Plaintiff and the Rule 23 Class Members statutory penalties for VITA's failure to timely pay Plaintiff and Class Members outstanding wages and overtime compensation, as well as statutory penalties for VITA's willful violation of Colorado Wage and Hour Law;

J.    Award Plaintiff her reasonable attorneys' fees and costs;

K.    Award Plaintiff a service award for her time and efforts on behalf of the FLSA Collective and the Rule 23 Class;

L.    Award Plaintiff and Class Members pre-judgment interest at the highest lawful rate; and

M.    Award such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 24th day of June, 2020.

/s/ Adam M. Harrison

_____

David H. Miller (8405)
Adam M. Harrison (50553)
**Sawaya & Miller Law Firm**
1600 Ogden Street
Denver, Colorado 80218
720.527.4369
aharrison@sawayalaw.com

/s/ Claire E. Hunter

_____
Claire E. Hunter (39504)
**HKM Employment Attorneys LLP**
730 17th Street, Suite 750
Denver, Colorado 80202
chunter@hkm.com

*Attorneys for Plaintiff Victoria Price individually*
*and on behalf of all others similarly situated*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**VICTORIA PRICE**,
individually and on behalf of all
others similarly situated,

       Plaintiff,

   **v.**

**VITA LOCATORS, LLC**,

       Defendant.

---

**CONSENT TO JOIN**

---

    I WANT TO JOIN THE LAWSUIT, *Price v. Vita Locators, LLC,* and assert claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, against the Defendant, Vita Locators, LLC. For the purposes of this lawsuit, I choose to be represented by the Plaintiff, Victoria Price, and by her attorneys at HKM Employment Attorneys, LLP and the Sawaya & Miller Law Firm, Claire Hunter, David H. Miller and Adam M. Harrison, and other attorneys with home they may associate for the purposes of this lawsuit.

Date: June 21st, 2020            Signed: _____

                                         Victoria Price
                                         Printed Name

JS 44 (Rev. 09/19)    District of Colorado

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| VICTORIA PRICE, et. al. | VITA Locators, LLC |

| (b) County of Residence of First Listed Plaintiff   King County, Washington | County of Residence of First Listed Defendant   Denver, Colorado |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| The Sawaya & Miller Law Firm, 1600 Ogden Street, Denver, CO 80218; (303) 839-1650 | N/A |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☒ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 201 et. seq.

Brief description of cause:
Federal and State wage and hour violations.

☐ AP Docket

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 06/23/2020 | /s/Adam M. Harrison |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 09/19)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.

Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.

**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

for the

### District of Colorado

| | |
|---|---|
| VICTORIA PRICE, individually and on behalf of all others similarly situated | ) ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | )      Civil Action No. |
| VITA LOCATORS, LLC | ) ) ) |
| *Defendant(s)* | ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*     VITA LOCATORS, LLC
c/o Andrew Wiggin, Registered Agent
2001 Lincoln Street, Apt. 1420
Denver, CO 80202

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

     David H. Miller, Esq
Adam M. Harrison, Esq
The Sawaya & Miller Law Firm
1600 Ogden Street
Denver, CO 80218

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

                                           _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____            _____
                                                    *Server's signature*

                                          _____
                                                    *Printed name and title*

                                          _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01868-CMA-SKC

**VICTORIA PRICE**,
individually and on behalf of all
others similarly situated,

        Plaintiff,

    **v.**

**VITA LOCATORS, LLC**,

**APARTMENT GUYZ, LLC**,

and

**ANDREW WIGGIN**, individually,

       Defendants.

---

### FIRST AMENDED INDIVIDUAL, COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff Victoria Price ("Price"), individually and on behalf of all others similarly situated, by and through her attorneys at HKM Employment Attorneys, LLP and the Sawaya & Miller Law Firm, brings this First Amended Individual, Collective and Class Action Complaint and Jury Demand ("Complaint") against Defendant VITA Locators, LLC ("VITA,"), Apartment Guyz, LLC ("Apartment Guyz"), and Andrew Wiggin, individually ("Wiggin") (collectively, "Defendants"), and states as follows:

### NATURE OF THE CASE

1.    Price alleges that the Defendants violated her rights, and the rights of other, similarly-situated employees ("Class Members") by failing to pay them wages, minimum wages,

and overtime compensation in violation of Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Claim Act, C.R.S. § 8-4-101 et seq., the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 et seq., the applicable Colorado Minimum Wage Orders, 7 C.C.R. 1103-1 (2017-2019), and the Colorado Overtime and Minimum Pay Standards Order, 7 C.C.R. 1103-1 (2020) (collectively, "Colorado Wage and Hour Law"), and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").

2. Under the FLSA and the Colorado Wage Act (as amended effective January 1, 2020), the corporate Defendants *and* Wiggin were the Class Members' "employers" because they each: (1) had the power to hire and fire employees; (2) determined the Class Members' rates of pay and methods of payment; (3) supervised and controlled the conditions of the Class Members' employment; and (4) exercised a high level of operational control. See *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1189–90 (D. Colo. 2012) (discussing "economic reality test" used to establish whether individual is an "employer" under the FLSA); C.R.S. § 8-4-101(6) ("'Employer' has the same meaning as set forth in the federal 'Fair Labor Standards Act'").

3. From June 16, 2017 to January 2018, the Class Members' "employers" were Apartment Guyz and Wiggin – the Director of Apartment's Guyz.

4. From January 2018 to the present, the Class Members' "employers" have been VITA and Wiggin, who is the owner, President and Chief Executive Officer of VITA.

5. At all times relevant to this Complaint, the Defendants had a policy or practice of paying Price and the Class Members on a commission-only basis. As a result of this policy/practice, the Defendants failed to pay Price and the Class Members wages, minimum wages, and

overtime compensation for all of the hours that they worked.

6.     In addition, the Defendants violated Colorado Wage and Hour Law by generally failing to provide Price and the Class Members with compensated 10-minute rest periods. 7 C.C.R. 1103-1:8 (2017-19); 7 C.C.R. 1103-1, Rule 5 (2020).

7.     VITA and Wiggin also failed to pay Price wages that were due to her at the time of her termination, as required by Colorado Wage and Hour Law. *See* C.R.S. § 8-4-109.

8.     The Defendants' violations of Colorado Wage and Hour Law and the FLSA were willful.

9.     Price brings this case as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all Class Members who were not paid federal minimum wages and/or overtime compensation as required by the FLSA ("FLSA Collective").

10.     Price also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all Class Members who were not paid earned wages, Colorado minimum wages, and overtime compensation, and/or provided with compensated 10-minute rest periods required under Colorado Minimum Wage and Hour Law ("Rule 23 Class").

11.     Price seeks unpaid wages, minimum wages, overtime compensation, liquidated damages, statutory penalties, injunctive and declaratory relief, costs, reasonable attorney's fees, and other appropriate relief for herself and the Class Members.

## <u>JURISDICTION AND VENUE</u>

12.     This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331, this action being brought under the FLSA, 29 U.S.C. § 201, *et seq.*

3

13.     This Court may exercise supplemental jurisdiction over Price's and the Class Members' state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

**PARTIES**

15.     Plaintiff, Victoria Price, is a resident of Colorado and former employee of the three Defendants. Price worked as an apartment locator for Apartment Guyz and Wiggin from September 4, 2017 to January 2018. She continued to work as an apartment locator for Apartment Guyz's successor, VITA, and for Wiggin from January 2018 to December 31, 2018.  Price signed an FLSA Consent Form to join this lawsuit, which is filed as ECF No. 1-1.

16.     Defendant VITA is, and at all times relevant to this Complaint was, a Colorado limited liability company with a principal office at 2001 Lincoln Street, Apartment 1420, Denver, Colorado 80202.

17.     Defendant Apartment Guyz is a Colorado limited liability company with its principal office at 450 Lincoln Street, Suite 105(A), Denver, Colorado 80203. Apartment Guyz's registered agent, Brandon Paul Hegland, may be found at 330 S. Downing Street, Denver, Colorado, 80209.

18.     Defendant Wiggin was the Director of Apartment Guyz and is the owner, President and CEO of VITA.

19.     Apartment Guyz and Wiggin were both "employers" of Price and the Class Members within the meaning of the FLSA from June 16, 2017 to January 2018. *See* 209 U.S.C. § 203(d).

4

20.     VITA and Wiggin have been "employers" of Price and the Class Members within the meaning of the FLSA since January 2018. *See id.*

21.     Apartment Guyz was an "employer" of Price and the Class Members, as defined by Colorado Wage and Hour Law, from June 16, 2017 to January 2018. *See* C.R.S. § 8-4-101(6).

22.     VITA has been an "employer" of Price and the Class Members as defined by Colorado Wage and Hour Law, since January 2018. *See* C.R.S. § 8-4-101(6).

23.     Wiggin has been an "employer" of Price and the Class Members as defined by the Colorado Wage Act, as amended effective January 1, 2020, since January 1, 2020. *See id.*

### GENERAL ALLEGATIONS

24.     During the period relevant to this Complaint, the Defendants were, and VITA and Wiggin still are, in the business of matching renters with apartment complexes that have vacancies. They make/made money by charging landlords a percentage of renters' first month's rent.

25.     The Defendants are/were engaged in interstate commerce: the services they provide(d) and the equipment they use(d) travel(ed) across state lines.

26.     On information and belief, Apartment Guyz and Wiggin did business of $500,000.00 or more in 2017.

27.     On information and belief, VITA and Wiggin did business of $500,000.00 or more each year in 2018, 2019, and 2020.

28.     During the period from June 16, 2017 to the present ("Relevant Period"), the Defendants employed individuals as apartment locators ("Locators") to match their customers with apartment complexes by communicating with such customers on the phone and through e-mail.

29.     In addition, Locators were and are required to constantly post apartment listings on

5

Craigslist.com on behalf of the Defendants.

30.     Throughout the Relevant Period, the Defendants generally employed 14-16 Locators at any given time.

31.     The Defendants employed at least 25 Locators ("Class Members") during the Relevant Period.

32.     Price and the Class Members were employed by Apartment Guyz and its Director, Wiggin, from June 16, 2017 to sometime in January 2018, when Apartment Guyz was succeeded by VITA, a company owned and managed by Wiggin.

33.     Throughout the Relevant Period, Wiggin had the power to hire and fire employees.

34.     At all times during the Relevant Period, Wiggin was the individual who was primarily responsible for determining the rates and methods of payment of the Class Members.

35.     At all times during the Relevant Period, Wiggin closely managed the day-to-day operations of the Class Members. He instructed the Class Members in the performance of their duties and imposed discipline on Class Members for failing to follow the companies' policies.

36.     At all times from June 16, 2017 to January 2018, Wiggin exercised ultimate control over Apartment Guyz and its operations.

37.     At all times since January 2018, Wiggin has exercised ultimate control over VITA and its operations.

38.     Wiggin hired Price to work as a Locator for Apartment Guyz on or around September 4, 2017.

39.     Price continued in that position in January 2018, when VITA took over Apartment Guyz's business and took on its employees.

6

40.     The Defendants generally required Price and the Class Members to work at their offices from 9:00 a.m. to 4:00 p.m. four days per week throughout most of Price's employment.

41.     Price and the Class Members were permitted to work from home one weekday each week, but were expected to work at least 9:00 a.m. to 4:00 p.m. on the day that they worked from home.

42.     On every or almost every day of the week, Price and the Class Members were required to follow up with the Defendants' customers, respond to text and e-mail messages from the Defendants, and constantly post the Defendants' apartment listings on Craiglist.com.

43.     Price and the Class Members performed these duties prior to and after their regular 9:00 a.m. to 4:00 p.m. shifts each weekday, and on weekends.

44.     Price and the Class Members were usually not able to take 10-minute rest breaks on the days that they worked in the office. Nor did they generally have duty-free lunch breaks on those days.

45.     Price and the Class Members generally worked at least 50 hours per week throughout their respective periods of employment with the Defendants.

46.     The Locators sometimes worked more than 12 hours per day.

47.     At all times during the Relevant Period, the Defendants classified Price and the Class Members as 1099 employees and accordingly, Price and the Class Members were deprived of benefits to which employees are entitled, including but not limited to minimum wages, overtime, tax benefits, and other benefits.

48.     Price and the Class Members should have been classified as regular, W-2 employees because they were subject to the control of the Defendants and economically dependent

on the Defendants.

49.     The Locators were required to report to work on fixed schedules, and to follow policies, practices, and procedures established by the Defendants.

50.     Price and the Class Members were required to ask customers standardized questions, and to fill in forms provided by the Defendants.

51.     The Defendants required Price and the Class Members to follow up with customers indefinitely until they rented an apartment listed by the Defendants.

52.     The Defendants also required Price and the Class Members to flood Craigslist with dozens of (often duplicative) advertisements on a daily basis.

53.     Each Locator had to spend hours flooding Craigslist for the Defendants every day.

54.     None of the Defendants' customers paid any money to Price and the Class Members.

55.     The rates of pay of Price and the Class Members were determined solely by the Defendants, without any input from Price and the Class Members.

56.     At all times during the Relevant Period, Price and the Class Members were engaged in the Defendants' primary, if not only, business.

57.     The work of Price and the Class Members was integral and essential to the Defendants, since Apartment Guyz and VITA could not function without employees to match renters with apartment complexes, or without employees to flood Craigslist with the Defendants' advertisements.

58.     Price and the Class Members generally worked on computers and other equipment provided by the Defendants.

8

59.     Price's and the Class Members' duties were supposed to be accomplished using software provided by the Defendants.

60.     Each Locator worked from the Defendants' e-mail server, from a company e-mail address that was issued by the Defendants.

61.     At all times during the Relevant Period, Price and the Class Members were economically dependent on the Defendants. The Defendants did not allow them to work for other employers during their periods of employment.

62.     Price and the Class Members were not employed on a temporary or piecemeal basis. They were required to work regular schedules and to perform all of their work duties as instructed by the Defendants.

63.     At all times during the Relevant Period, the Defendants had a policy or practice of paying Locators on a commission-only basis. The Defendants did not pay Price and the Class Members an hourly wage rate, nor did the Defendants pay them overtime premiums for hours that they worked in excess of 40 per week and/or 12 per day, and/or 12 per shift.

64.     Also during the Relevant Period, the Defendants did not provide Price and the Class Members with compensated 10-minute rest periods, as required by Colorado Wage and Hour Law.

65.     During the first eight weeks of Price's employment, for example, Price worked at least 50 hours each week, for a total of at least 400 hours.

66.     Price was not paid anything at all during the first eight weeks of her employment, from September 4, 2017 to November 2, 2017, when she received a check for only $435.00.

67.     As another example, during November of 2018, Price worked at least 50 hours per week, totaling at least 200 hours of work. However, Price was not paid anything by the Defendants

Case 2:20-cv-02068-CM-ADM Document 62 Filed 09/11/21 Page 18 of 25
Case 1:18-cv-01768-KLM Document 39-11 Filed 12/06/21 USDC Colorado Page 18 of
pg 35 of 54

from November 3, 2018 to December 6, 2018.

68.     During the days that Price worked at the Defendants' offices, she did not receive compensated 10-minute breaks, and she observed that the other Locators did not receive such breaks, either.

69.     At the time her employment was terminated, Price was owed at least $16,217.00 in commissions, which remained unpaid until Price retained counsel.

70.     The Plaintiff sent a demand for payment of unpaid wages in compliance with C.R.S. § 8-4-109 to VITA and Wiggin.  The Defendants are therefore on actual notice that Plaintiff and other similarly situated employees are due unpaid wages resulting from the Defendants' illegal pay policies and practices.

71.     After 14 days passed from Price's demand for wages, Defendants made an untimely tender of $16,217.00.

72.     This Complaint further puts the Defendants on constructive or implied notice that Plaintiff and all of the Defendants' similarly situated employees are also due unpaid wages resulting from the Defendants' illegal pay policies and practices.

73.     Despite receiving notice of Price's and the Class Members' claims, the Defendants have not tendered any money to the Plaintiff or the Class Members in response to Price's demands.

74.     At all times relevant to this Complaint, the Defendants were or should have been aware of the requirements of the FLSA and Colorado Wage and Hour Law, but nevertheless failed to pay Price and the Class Members wages, minimum wages, and overtime compensation for all of the hours that they worked.

## FLSA COLLECTIVE ACTION ALLEGATIONS

75.     Price brings this action pursuant to 29 U.S.C. § 216(b) on her behalf of herself and

the following FLSA collective:

> **All individuals who worked for Apartment Guyz, VITA, and/or
> Andrew Wiggin as Locators from June 16, 2017 to the present.**

("FLSA Collective").  Plaintiff reserves the right to amend this definition if necessary.

76.     Price and the FLSA Collective Members are similarly situated under the FLSA in

that: (a) they all worked or work in similar positions as Locators; (b) they were all subject to the

same policy or practice of commission-only pay; and (c) their claims are all based upon the same

legal theories.

77.     Price signed an FLSA Consent Form to join this lawsuit, which is filed as ECF No.

1-1. Another locator, Kemar Barrett, also filed a Consent Form, which is filed as ECF No. 4.

## RULE 23 CLASS ACTION ALLEGATIONS

78.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own

behalf and on behalf of the following Class:

> **All individuals who worked for Apartment Guyz, VITA, and/or Andrew
> Wiggin as Locators from June 16, 2017 to the present.**

("Rule 23 Class"). Plaintiff reserves the right to amend this definition if necessary.

79.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class

Members in this case would be impractical.  Plaintiff reasonably estimates that there are at least

30 Rule 23 Class Members.

80.     There is a well-defined community of interest among the Rule 23 Class Members

and common questions of law and fact predominate in this action over any questions affecting

individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

    a.   Whether the Defendants had a common policy or practice of paying Class Members on a commission-only basis;

    b.   Whether, based on their policy or practice of paying Class Members on a commission-only basis, the Defendants failed to pay Class Members the applicable Colorado minimum wages;

    c.   Whether the Defendants had a common policy or practice of failing to pay Class Members overtime compensation for hours they worked over 40 per week, 12 per day, and/or 12 per shift;

    d.   Whether the Defendants generally failed to authorize and permit compensated 10-minute rest periods mandated by Colorado Wage and Hour Law;

    e.   Whether the Defendants' policies and practices at issue in this case violated Colorado Wage and Hour Law;

    f.   Whether the Defendants' violations of Colorado Wage and Hour Law were willful; and

    g.   Whether the Class Members were harmed by the Defendants' violations of Colorado Wage and Hour Law.

81.    Plaintiff's claims are typical of those of the Rule 23 Class in that she is owed wages, minimum wages, and overtime compensation for the Defendants' violations of Colorado Wage and Hour Law. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class Members' claims and her legal theories are based on the same

12

legal theories as all other Rule 23 Class Members.

82.     Plaintiff will fully and adequately protect the interests of the Rule 23 Class and she

has retained counsel who are qualified and experienced in the prosecution of wage and hour class

actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the

interests of the Rule 23 Class.

83.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class

members to prosecute individual actions of their own given the relatively small amount of damages

at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this

case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed

in multiple state and federal courts.

84.     This case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel

know of no unusual difficulties in this case.

85.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification

is appropriate.

86.     Moreover, because the Defendants acted and refused to act on grounds that apply

generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the

Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF
### THE FAIR LABOR STANDARDS ACT

### 29 U.S.C. § 201, *et seq.*

### *On behalf of Price and the FLSA Collective*

13

87.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

88.     Apartment Guyz and Wiggin were both "employers" of Price and the Class Members within the meaning of the FLSA, subject to the requirements of the FLSA, from June 16, 2017 to January 2018. *See* 209 U.S.C. § 203(d).

89.     VITA and Wiggin have been "employers" of Price and the Class Members within the meaning of the FLSA, and subject to the provisions of the FLSA, since January 2018. *See id.*

90.     At all times relevant to this action, Price and the FLSA Collective Members were "employees" of the Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

91.     Under the FLSA, the Defendants were required to pay Price and the FLSA Collective Members the federal minimum wage of $7.25 per hour for all of the hours that they worked at or under 40 per week. 29 U.S.C. § 206.

92.     At all times during the Relevant Period, the Defendants had a policy or practice of paying Price and the FLSA Collective Members on a commission-only basis. As a result of this policy or practice, the Defendants did not pay the Locators the federal minimum wage for all of the hours that they worked.

93.     Because the Defendants were or should have been aware of the minimum wage requirements of the FLSA at all times during the Relevant Period, and nevertheless failed to pay Price and the FLSA Collective Members the federal minimum wage, the Defendants' violations of federal law were willful.

94.     Based on the Defendants' violations of the FLSA, Price and the FLSA Collective Members are entitled to unpaid minimum wages, liquidated damages, reasonable attorney's fees,

and the costs of this litigation.

95.     Apartment Guyz is liable to Price and the Class Members for all such damages for the hours they worked from June 16, 2017 to the date on which VITA took over its operations in January 2018.

96.     VITA is liable for all such damages for the hours Price and the Class Members worked from January 2018, when it took over Apartment Guyz's operations, to the present.

97.     Wiggin is liable to the Class Members for all such damages for the hours Price and the Class Members worked from June 16, 2017 to the present.

## COUNT II

### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

#### 29 U.S.C. § 201, *et seq.*

#### *On behalf of Price and the FLSA Collective*

98.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

99.     The FLSA required the Defendants to pay their Locators overtime compensation at a rate of one and one-half times their regular rates of pay for all of the hours they worked over 40 per week during the Relevant Period. 29 U.S.C. § 207.

100.    During the Relevant Period, Price and the FLSA Collective Members generally worked 50 hours or more per week.

101.    At all times during the Relevant Period, the Defendants had a policy or practice of paying Price and the FLSA Collective Members on a commission-only basis. As a result of this policy or practice, the Defendants failed to pay the Locators a regular rate of pay and did not pay

them an overtime premium of any kind for the hours they worked over 40 per week.

102.    Because the Defendants were or should have been aware of the overtime requirements of the FLSA at all times during the Relevant Period, and nevertheless failed to pay Price and the FLSA Collective Members overtime compensation, the Defendants' violations of federal law were willful.

103.    Based on the Defendants' violations of the FLSA, Price and the FLSA Collective Members are entitled to unpaid overtime compensation, liquidated damages, reasonable attorney's fees, and the costs of this litigation.

104.    Apartment Guyz is liable to Price and the Class Members for all such damages for the hours they worked from June 16, 2017 to the date on which VITA took over its operations in January 2018.

105.    VITA is liable for all such damages for the hours Price and the Class Members worked from January 2018, when it took over Apartment Guyz's operations, to the present.

106.    Wiggin is liable to the Class Members for all such damages for the hours Price and the Class Members worked from June 16, 2017 to the present.

## COUNT III

### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF COLORADO WAGE AND HOUR LAW

**Colo. Const. Art. XVIII § 15
C.R.S. § 8-4-101 et seq.
C.R.S. § 8-6-101 et seq.
7 C.C.R. 1103-1 (2019)
7 C.C.R. 1103-1 (2020)**

*On behalf of Price and the Rule 23 Class*

107.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further

alleges as follows.

108.     Apartment Guyz was an "employer" of Price and the Class Members, as defined by Colorado Wage and Hour Law, from June 16, 2017 to January 2018, when VITA took over its operations. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1:2 (2017).

109.     VITA has been an "employer" of Price and the Class Members as defined by Colorado Wage and Hour Law since January 2018. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1:2 (2018-19); 7 C.C.R. 1103-1 (2020).

110.     Wiggin has been an "employer" of Price and the Class Members as defined by the Colorado Wage Act, as amended effective January 1, 2020, since January 1, 2020. *See* C.R.S. § 8-4-101(6);

111.     At all times during the Relevant Period, Price and the Rule 23 Class Members were "employees" subject to the protections of Colorado Wage and Hour Law. C.R.S. § 8-4-101(5).

112.     Colorado Wage and Hour Law provides:

> All wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments.

C.R.S. § 8-4-103.

113.     Colorado Wage and Hour Law required the Defendants to pay the Locators minimum wage rates of: $9.30 per hour for hours worked in 2017; $10.20 per hour for hours worked in 2018; and $11.20 per hour for hours worked in 2019; and $12.00 per hour for hours worked in 2020. 7 C.C.R. 1103-1 (2017); 7 C.C.R. 1103-1 (2018); 7 C.C.R. 1103-1 (2019); 7

C.C.R. 1103-1 (2020).

114.     Due to the Defendants' policy or practice of paying Locators on a commission-only basis, the Defendants did not pay Price and the Rule 23 Class Members minimum wages for all of the hours that they worked within 10 days of any regular pay period.

115.     Because the Defendants were aware, or should have been aware, of the minimum wage requirements of Colorado Wage and Hour Law, but failed to pay Price and the Rule 23 Class Members minimum wages, their violations of Colorado Wage and Hour Law were willful.

116.     Price sent a demand to VITA and Wiggin on behalf of herself and the Rule 23 Class Members pursuant to C.R.S. § 8-4-109, but the Defendants refused to provide a tender that would cure this claim.

117.     Based on the Defendants' violations of Colorado Wage and Hour Law, the Defendants are liable for unpaid wages, minimum wages, statutory penalties, additional penalties for the willfulness of their actions, reasonable attorney's fees and costs.

118.     Apartment Guyz are liable for all such damages for the hours Class Members worked from June 16, 2017 to January 2018.

119.     VITA is liable for all such damages for the hours Class Members worked from January 2018 to the present.

120.     Wiggin is liable for all such damages for the hours Class Members worked from January 1, 2020 to the present.

## COUNT IV

### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF
### COLORADO WAGE AND HOUR LAW

**Colo. Const. Art. XVIII § 15**
**C.R.S. § 8-4-101 et seq.**
**C.R.S. § 8-6-101 et seq.**
**7 C.C.R. 1103-1 (2019)**
**7 C.C.R. 1103-1 (2020)**

*On behalf of Price and the Rule 23 Class*

121. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

122. Price and the Rule 23 Class Members generally worked more than 40 hours per week during their respective periods of employment, and sometimes worked more than 12 hours per day.

123. Colorado Wage and Hour Law required the Defendants to pay the Locators one and one-half times their regular rates of pay for all of the hours they worked in excess of 40 per week, 12 per day, and/or 12 per shift. 7 C.C.R. 1103-1, Rule 4 (2020); 7 C.C.R. 1103-1:4 (2017-19).

124. Due to their policy of paying Locators on a commission-only basis, the Defendants failed to pay the Rule 23 Class Members a regular rate of pay, and did not pay them any kind of overtime premium for the hours they worked over 40 per week, 12 per day, and/or 12 per shift.

125. Because the Defendants were aware, or should have been aware, of the overtime requirements of Colorado Wage and Hour Law but failed to pay Price and the Rule 23 Class Members overtime compensation, the Defendants' violations of Colorado Wage and Hour Law were willful.

126. Based on VITA's violations of Colorado Wage and Hour Law, the Defendants are liable for unpaid overtime compensation, statutory penalties, additional penalties for the willfulness of their actions, reasonable attorney's fees and costs.

19

127. Apartment Guyz is liable for all such damages for the hours Class Members worked from June 16, 2017 to January 2018.

128. VITA is liable for all such damages for the hours Class Members worked from January 2018 to the present.

129. Wiggin is liable for all such damages for the hours Class Members worked from January 1, 2020 to the present.

<u>COUNT V</u>

**FAILURE TO PROVIDE REST PERIODS IN VIOLATION OF
COLORADO WAGE AND HOUR LAW**

**Colo. Const. Art. XVIII § 15
C.R.S. § 8-4-101 et seq.
C.R.S. § 8-6-101 et seq.
7 C.C.R. 1103-1 (2019)
7 C.C.R. 1103-1 (2020)**

*On behalf of Price and the Rule 23 Class*

130. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

131. Colorado Wage and Hour Law required the Defendants to "authorize and permit" compensated 10-minute rest periods to each Locator for every period that the Locator worked over two hours. 7 C.C.R. 1103-1, Rule 5 (2020); 7 C.C.R. 1103-1:8 (2017-19).

132. VITA violated Colorado Wage and Hour Law by generally failing to provide compensated 10-minute rest periods to Price and the Rule 23 Class Members.

133. Because the Defendants were aware, or should have been aware, of the rest period requirements of Colorado Wage and Hour Law but failed provide Price and the Rule 23 Class Members with rest periods, the Defendants' violations of Colorado Wage and Hour Law were

20

willful.

134.    Based on the Defendants' violations of Colorado Wage and Hour Law, Defendant
is liable for unpaid wages, minimum wages, statutory penalties, willfulness penalties, reasonable
attorney's fees and costs.

135.    Apartment Guyz is liable for all such damages for the hours Class Members worked
from June 16, 2017 to January 2018.

136.    VITA is liable for all such damages for the hours Class Members worked from
January 2018 to the present.

137.    Wiggin is liable for all such damages for the hours Class Members worked from
January 1, 2020 to the present.

## COUNT VI

### FAILURE TO PAY WAGES DUE IN VIOLATION
### COLORADO WAGE AND HOUR LAW

**C.R.S. § 8-4-101 et seq.**
**C.R.S. § 8-6-101 et seq.**
**7    C.C.R. 1103-1 (2019)**

*On behalf of Price individually,*
*Against VITA and Wiggin*

138.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further
alleges as follows.

139.    Price performed services as a Locator including providing information to customers
that then used the information to rent apartment properties.

140.    VITA and Wiggin agreed to pay Price for these duties on a commission basis.

141.    VITA and Wiggin failed to pay Price commissions, minimum wages, and overtime

wages for the performance of these duties.

142. VITA and Wiggin owed Price at least $16,217.00 in such commissions but did not

tender the $16,217 until more than 14 days passed after Price's written demand for payment.

143. Minimum wages, overtime, and the above referenced commissions were earned,

vested and determinable during Price's employment, and thus VITA and Wiggin were obligated

to pay these commissions to Price.

144. The Defendants' failure to pay Price her earned wages, including the owed

commissions, was willful.

145. Plaintiff is therefore entitled to recover the unpaid minimum wages, overtime

wages, and the penalties associated with the untimely paid commissions, including all applicable

penalties, statutory damages, costs, and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the similarly situated FLSA Collective

and Rule 23 Class, prays for the following relief:

A. At the earliest possible time, the Court conditionally certify this case as a collective

action pursuant to 29 U.S.C. § 216(b) and permit Plaintiff to notify all affected persons that an

action asserting FLSA claims has been filed, of the nature of the action, and of their right to join

the suit;

B. At the earliest possible time, the Court certify this case as a class action pursuant to

Fed. R. Civ. P. 23 and permit Plaintiff to notify all affected persons that an action asserting

Colorado Wage and Hour Law claims has been filed, of the nature of the action, and of their rights

in regard to the suit;

C.      Declare that the Defendants violated the minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 207, as to Plaintiff and similarly situated persons who opt into this action; that the Defendants' violations were willful; that a three-year statute of limitations applies to the FLSA Collective; that Plaintiff and other similarly situated persons are entitled to be paid overtime compensation for work in excess of 40 hours per week; and that the amount of unpaid time worked and overtime wages to which Plaintiff and others similarly situated are entitled is to be doubled as liquidated damages and awarded to them;

D.      Declare that the Defendants violated Colorado Wage and Hour Law by failing to pay regular wages, minimum wages, and overtime compensation to Plaintiff and the Rule 23 Class Members; that the Defendants failed to pay Plaintiff and Rule 23 Class Members their outstanding wages within 14 days of a written demand for same; and that the Defendants acted willfully in violating Colorado Wage and Hour Law;

E.      Grant Plaintiff, all FLSA Collective Members, and all Rule 23 Class Members a permanent injunction enjoining the Defendants, and all those acting in concert with the Defendants at the Defendants' direction, from engaging in the policies and practices which violate the FLSA and Colorado Wage and Hour Law;

F.      Award Plaintiff and other similarly situated persons who opt in to the FLSA Collective damages in the amount of minimum wages, overtime compensation, and any other amounts owed, to be proven at trial;

G.      Award Plaintiff and other similarly situated persons who opt in to the FLSA Collective liquidated damages in an amount equal to the unpaid minimum wages and overtime compensation shown to be owed pursuant to 29 U.S.C. § 216(b);

H.  Award Plaintiff and the Rule 23 Class Members the amount of unpaid wages, minimum wages, overtime compensation, and any other amounts owed due to the Defendants' policies and practices, according to proof at trial;

I.  Award Plaintiff and the Rule 23 Class Members statutory penalties for the Defendants' failure to timely pay Plaintiff and Class Members outstanding wages and overtime compensation, as well as statutory penalties for the Defendants' willful violation of Colorado Wage and Hour Law;

J.  Award Plaintiff her reasonable attorneys' fees and costs;

K.  Award Plaintiff a service award for her time and efforts on behalf of the FLSA Collective and the Rule 23 Class;

L.  Award Plaintiff and Class Members pre-judgment interest at the highest lawful rate; and

M.  Award such further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues so triable.


Respectfully submitted this 11th day of February 2021.

/s/ Adam M. Harrison

_____
David H. Miller (8405)
Adam M. Harrison (50553)
**Sawaya & Miller Law Firm**
1600 Ogden Street
Denver, Colorado 80218
720.527.4369
aharrison@sawayalaw.com

24

Case 2:20-cv-02863-KMM Document 62 Filed 11/16/21 USDC Colorado Page 25 of 25
Case No. 1:20-cv-02863-KMM Document 39 Filed 12/16/21 USDC Colorado Page 50 of 54
pg 50 of 54

/s/ Claire E. Hunter

_____

Claire E. Hunter (39504)
**HKM Employment Attorneys LLP**
730 17th Street, Suite 750
Denver, Colorado 80202
chunter@hkm.com

*Attorneys for Plaintiff Victoria Price individually
and on behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

I certify that on this 11th day of February 2021, I filed the foregoing **FIRST AMENDED INDIVIDUAL, COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND** through the CM/ECF system, generating true and accurate copies of these documents to all counsel of record.

*/s/ Jen Kern*

_____

Jen Kern, Paralegal

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01868-CMA-SKC

VICTORIA PRICE, individually and on behalf
of all others similarly situated,

       Plaintiff,

       v.

VITA LOCATORS, LLC,

       Defendant.

---

## UNOPPOSED MOTION TO SUBSITUTE CLASS REPRESENTATIVE

---

Class Counsel from HKM Employment Attorneys LLP, pursuant to Rules 15 and 23 of the Federal Rules of Civil Procedure, hereby move the Court to grant them leave to substitute Opt-in Plaintiff Kemar Barrett as the Class Representative of the Class certified by the Court for settlement purposes (ECF No. 75), and state as follows:

1.      Pursuant to D.C.COLO.LCivR 7.1(a), Class Counsel certify that they conferred with the Defendant's counsel prior to filing this Motion, and that the Defendant does not oppose this Motion.

2.      This case was initially filed by Victoria Price, on behalf of herself and all of the Class Members, on June 24, 2021. ECF No. 1. On July 6, 2021, Kemar Barrett filed a Consent to Join this lawsuit. ECF No. 4.

3.      On April 2, 2021, Victoria Price tragically passed away at the age of 29.

4.     On September 13, 2021, the Court granted the Plaintiff's Unopposed Motion to Certify

Class for Settlement Purposes, to Preliminarily Approve Class Action Settlement, and to Authorize

Notice to Settlement Class. ECF No. 75. In its Order granting the Motion, the Court certified the

Class reflected in the Parties' Settlement Agreement, appointed Victoria Price as the Class

Representative, and appointed Ms. Price's undersigned counsel as Class Counsel. *Id.* at 2.

5.     This Court may grant leave to substitute a class representative. *See In re Thornburgh,* 869

F.2d 1503, 1509 (D.C.Cir.1989); 1 Newberg on Class Actions § 2:26 (4th ed. 2006). For

substitution to occur, "a class representative must be part of the class and possess the same interest

and suffer the same injury as the class members." *Johnson v. GEICO Cas. Co.*, 672 F. App'x 150,

157 (3d Cir. 2016); *see* Fed. R. Civ. P. 23(a)(3).

6.     In deciding whether to grant a motion to substitute, courts generally apply Fed. R. Civ. P.

15. *See Sullivan v. Gov't Employees Ins. Co.*, No. 617CV891ORL40KRS, 2018 WL 6267352, at

*5 (M.D. Fla. Nov. 30, 2018); *In re Nat'l Austl. Bank Sec. Litig.,* Civ. No. 03–6537, 2006 WL

3844463, *3 (S.D.N.Y. Nov. 8, 2006). Accordingly, a motion to substitute should be granted unless

the court finds: "(1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3)

repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to

the opposing party by virtue of allowance of the amendment, or (5) futility of amendment." *See*

*Glen Ridge SurgiCenter, LLC v. Horizon Blue Cross & Blue Shield of New Jersey*, No. CIV.A.

08-6160 JLL, 2011 WL 5881924, at *5 (D.N.J. Sept. 16, 2011); *McKinney v. Bayer Corp.*, No.

1:10-CV-00224, 2011 WL 2553304, at *1 (N.D. Ohio June 28, 2011); *Archuleta v. City of Santa*

*Fe*, No. CV 13-363 JAP/SCY, 2014 WL 12782788, at *5 (D.N.M. Dec. 22, 2014).

7.      In light of the Plaintiff's passing, Class Counsel respectfully ask the Court to allow them to substitute Opt-in Plaintiff Kemar Barrett for Class Representative Victoria Price. Mr. Barrett is an appropriate representative because he is part of the class, has the same interests as the other class members, and alleges the same injury as the other class members. *See* ECF No. 4; *see generally* ECF No. 72. Mr. Barrett is willing to serve as the class representative. He is not seeking any award or compensation that is allocated to Ms. Price, or to otherwise alter the terms of the Settlement she obtained for the Class Members.

8.      There has been no undue delay, bad faith or dilatory motive, failure to cure deficiencies, or undue prejudice, nor is amendment futile.

WHEREFORE, Class Counsel respectfully ask the Court to grant them leave to substitute Opt-In Plaintiff Kemar Barrett as the Class Representative.

Respectfully submitted on this 1st day of October, 2021.

*/s/ Adam M. Harrison*

_____

Adam M. Harrison (50553)
Claire E. Hunter (39504)
**HKM Employment Attorneys LLP**
730 17th Street, Suite 750
Denver, Colorado 80202
720.255.0370
chunter@hkm.com
aharrison@hkm.com

*Attorneys for Plaintiff Victoria Price*
*individually and on behalf of all others*
*similarly situated*

## **CERTIFICATE OF SERVICE**

I certify that on this 1st day of October, 2021, I electronically filed the foregoing Motion through the CM/ECF System, generating a true and accurate copy of this document to all counsel of record.

*/s/ Adam M. Harrison*

_____

Adam M. Harrison