Exhibit

**C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:20-cv-01868-CMA-SKC**

**KEMAR BARRETT, individually and on behalf of
all others similarly situated,**

      **Plaintiff,**

**v.**

**VITA LOCATORS, LLC, APARTMENT GUYZ, LLC, and
ANDREW WIGGIN,**

      **Defendants.**

---

## JOINT MOTION SEEKING FINAL APPROVAL OF CLASS ACTION
## SETTLEMENT AND SERVICE AWARD FOR VICTORIA PRICE

---

The Plaintiff, Kemar Barrett ("Barrett"), individually and on behalf of all others similarly situated, and the Defendants, Vita Locators, LLC and Andrew Wiggin, through their undersigned counsel of record, as their Joint Motion Seeking Final Approval of Class Action Settlement and Service Award for Victoria Price ("Motion"), state as follows:

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned Class Counsel certify that they have conferred with the Defendants' counsel regarding this Motion, and that the Motion is filed jointly on behalf of the parties.

### INTRODUCTION

The Parties seek final approval of the class action settlement that is reflected in the Settlement Agreement (attached as Exhibit 1, "Settlement") preliminarily approved by this Court

1

in its September 13, 2021 Order Granting Unopposed Motion to Certify Class for Settlement Purposes, to Preliminarily Approve Class Action Settlement, and to Authorize Notice to Settlement Class (ECF No. 75, "Preliminary Approval Order"). They also seek approval of the Service Award for Victoria Price ("Price"), to be paid to Prices estate as contemplated by the Settlement Agreement.[1]

Under the Settlement, Barrett and all of the 38 individuals ("Settlement Class Members") who worked for Vita Locators, LLC ("Vita") as apartment locators between January 1, 2018 and May 19, 2021 ("Relevant Period") will release their claims against the Defendants, including among others, those claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Colorado Wage and Hour Law[2] in exchange for a total payment of $165,000.00 ("Total Settlement Payment"), to be distributed to the Settlement Class Members on a *pro rata* basis, and to include attorneys' fees and costs and a Service Award of $7,500.00 for Victoria Price.

The Settlement should be approved because it is "fair, reasonable, and adequate" under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* Fed. R. Civ. P. 23(e)(2); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (discussing factors to be considered in determining whether settlement is "fair, reasonable, and adequate"). The Settlement

---

[1] As indicated by Class Counsel in their Motion to Substitute Class Representative (ECF No. 78), Price tragically passed away in August. Barrett, a Class Member who has provided essential testimony and assistance to Price and Class Counsel, volunteered to step in for Price to make sure that the Settlement comes to fruition.

[2] As used throughout this Motion, "Colorado Wage and Hour Law" includes Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.,* the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.*, the applicable Colorado Minimum Wage Orders, 7 C.C.R. 1103-1 (2017-2019), and the Colorado Overtime and Minimum Pay Standards Order, 7 C.C.R. 1103-1 (2020).

was fairly and honestly negotiated between counsel who are experienced in class actions. *See Rutter*, 314 F.3d at 1188. Serious questions of law and fact, including but not limited to whether the Settlement Class Members were improperly classified as independent contractors, the number of hours they worked, whether they were authorized and permitted to take rest breaks, and the statute of limitations that applies to their claims, place the outcome of the litigation in doubt. *See id.* The value of the Settlement – under which each Settlement Class Member will be allocated $172.09 (14 hours of pay at the Colorado minimum wage) for each month that they worked during the Relevant Period – outweighs the mere possibility of future relief after protracted and expensive litigation. *See id.* Moreover, the Parties and their counsel judge the Settlement to be fair and reasonable, and no Settlement Class Member has objected to – or even opted out of – the Settlement. *See id.*; *see also Rothe v. Battelle Meml Inst.*, No. 1:18-CV-03179-RBJ, 2021 WL 2588873, at *4 (D. Colo. June 24, 2021) ("The Court may also consider the fact that no objections were filed by any class members" in deciding whether to approve settlement).

The Service Award for Victoria Price should be approved as well. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) ($7,500 service award was "appropriate and... commensurate with awards in similar cases"). Price spent a substantial amount of time and energy, and undertook considerable personal risk, in bringing this action. Accordingly, the payment of a Service Award of $7,500.00 to her estate is reasonable and appropriate. *Id.*

## **BACKGROUND**

On June 24, 2020, Price filed her Complaint alleging that Vita Locators, LLC ("Vita") violated her rights, and the rights of the other apartment locators, under the FLSA and Colorado Wage and Hour Law by: (1) failing to pay them federal minimum wages for some of the hours that

they worked; (2) failing to pay them overtime compensation; (3) failing to pay them Colorado minimum wages for some of the hours that they worked; and (4) failing to provide them with compensated rest periods. ECF No. 1. Individually, Price alleged that Vita failed to timely remit payment of wages she demanded pursuant to C.R.S. § 8-4-109. *Id.* Vita filed an Answer denying Price's allegations and further denying that it violated the apartment locators' rights in any way. ECF No. 17.

The Parties engaged in early settlement discussions and jointly requested a Settlement Conference on September 4, 2020. ECF No. 25. A Settlement Conference was conducted by Magistrate Judge S. Kato Crews on November 4, 2021. ECF No. 36. While the Parties were unable to reach a resolution at that Conference, they continued their good-faith efforts to reach an amicable resolution during four months of discovery and litigation. *See* ECF Nos. 50, 66.

On November 11, 2020, Price filed a Motion for Conditional Approval of FLSA Collective Action, and a Motion for Leave to Amend Complaint to add Apartment Guyz, LLC ("Apartment Guyz") and Wiggin ("Wiggin") as defendants, and to clarify her individual claims under C.R.S. § 8-4-109. ECF Nos. 38, 49, 55, and 57. Vita filed an Answer to Price's Amended Complaint, again denying any liability and asserting counterclaims against Price and third-party claims against Victoria Price, LLC, including civil theft, conversion, negligent misrepresentation, and unjust enrichment – all related to Vita's assertion that Price's C.R.S. § 8-4-109 demand sought payments that were not due to her. ECF No. 63.[3] Wiggin filed a motion to dismiss Price's claims against him. ECF No. 64.

---

[3] Price objected to the Court allowing the counterclaims, alleging that the inclusion of such claims constituted retaliation in violation of the FLSA and C.R.S. § 8-4-120. ECF No. 60.

On March 18, 2021, the Parties informed the Court that after four months of negotiations, they had reached an agreement to fully settle the case as to all claims and counterclaims against all Parties, and moved the Court to stay the case pending their finalization of the Settlement. ECF No. 66. The releases in the Settlement Agreement expressly include the Plaintiffs' claims against Apartment Guyz, and all counterclaims and third-party claims brought by the Defendants.

On May 19, 2021, in accordance with the Settlement, Price filed an Unopposed Motion to Certify Class for Settlement Purposes, to Preliminarily Approve Class Action Settlement, and to Authorize Notice to Settlement Class (ECF No. 72, "Preliminary Approval Motion"). As explained in that Motion, the terms of the Settlement are as follows:

    A.  Price, Vita, and Wiggin stipulated to the certification, for the purposes of effectuating the settlement, of the Settlement Class, consisting of all individuals who worked with Vita Locators LLC as apartment locators at any time between January 1, 2018 and date of Settlement Agreement, May 19, 2021 ("Settlement Class");

    B.  The Parties also stipulated to the appointment of Price as the Class Representative, and her attorneys at HKM Employment Attorneys LLP, Claire Hunter and Adam Harrison, as Class Counsel.

    C.  Subject to final approval by this Court:

        (1)  Vita and Wiggin agree to pay a Total Settlement Payment of $165,000.00 to resolve all of the claims that were brought or that could have been brought by or against all Parties in this action. The Total Settlement Payment includes attorneys' fees and costs of Class Counsel. The Total Settlement

Payment also includes the amount of $7,500 to Victoria Price as a Service Award. Due to the fact that Price has passed away, her Service Award should be paid to her estate;

(2) Defendants will also pay the employer's share of taxes due on the wages paid under the Settlement;

(3) The Parties request that Vita and Wiggin be permitted to pay the Total Settlement Payment no later than 90 days after the Court grants final approval of the Settlement. This request is being made to allow the Defendants sufficient time to put together funds for the Total Settlement Payment, and not for the purpose of delay or any other improper purpose;

(4) Vita agrees to reclassify all current Locators as employees;

(5) After attorneys' fees, costs, and payment on Prices individual wage claim, the Parties anticipate that each Settlement Class Member will be paid $172.09 (14 hours of pay at the Colorado minimum wage) for each month that he/she worked as an apartment locator for the Defendants during the Relevant Period. Half of the Total Settlement Payment made to each Class Member will be allocated as wages, for which the Defendants counsel will provide an IRS Form W-2, and half of the Total Settlement Payment will be allocated as non-wage damages, for which the Defendants' counsel will provide an IRS Form 1099;

(6) In addition, a non-payroll check for the Service Award to Victoria Price in the total amount of $7,500.00, which will be free of any deduction, and for which Defendants' counsel will provide IRS Forms 1099;[4] and

(7) Class Counsel is filing a Motion for Order Approving Attorneys' Fees and Costs contemporaneously with this Motion, in which Class Counsel seeks fees of $52,166.00 and costs of $800.00. The Defendants do not oppose that Motion.

The Parties jointly drafted Notice and Opt-Out forms ("Notices"), which are filed as ECF No 72-2, to send to the Settlement Class Members. Copies of the forms that were sent are attached to the Declaration of Jenny Kern, filed herewith as Exhibit 3.

The Court approved the Notices, which were written in clear, easily-understood language, and described the nature of this lawsuit, the definition of the Settlement Class, the issues in the case, the Settlement Class Members rights to opt out, object, and/or appear through counsel, and the binding effect of the Settlement on Settlement Class Members who did not opt out. *See* Fed. R. Civ. P. 23(c)(2)(B) (requirements for class notice for class certified under Rule 23(b)(3)).

In the Preliminary Approval Order, the Court: (1) certified the Settlement Class for the purposes of the Settlement; (2) preliminarily approved the Settlement as "fair, reasonable, and adequate under the standards established in *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002); (3) appointed Price as the Class Representative; (4) appointed Class Counsel; (5) approved the Notices to be sent to the Class Members and ordered that notice be sent

---

[4] Class Counsel has identified the executor of Price's estate, and confirmed that she is the executor. The Service Award check will be written out to "Victoria K. Price" and delivered to the executor at the time the settlement distributions are made.

within 14 days of the Order; Settlement Class Members had 45 days to object to or opt out of the Settlement; Class Counsel was required to make reasonable efforts to locate and provide notice to Class Members whose notices were returned as undeliverable and Defendants were required to cooperate with those efforts; (6) scheduled a Final Fairness Hearing; and (7) ordered the undersigned counsel to file this Motion. *See* ECF No. 75.

Class Counsel and the Defendants cooperated in exchanging relevant information and providing notice to the Settlement Class Members, and such notice was provided in accordance with the Court's Preliminary Approval Order. *See* Ex. 3.

On October 1, 2021, Class Counsel filed an Unopposed Motion to Substitute Class Representative. ECF No. 78. On October 12, 2021, the Court issued a Minute Order granting that Motion, and appointing Barrett as the substitute Class Representative.

## DISCUSSION

### 1. REQUEST FOR FINAL APPROVAL OF SETTLEMENT

To be valid, a class action settlement must be approved by the court. Fed. R. Civ. P. 23(e). "In deciding whether to approve a settlement in class action, a court must determine whether the settlement is fair, reasonable, and adequate." *Rothe v. Battelle Meml Inst.*, No. 1:18-CV-03179-RBJ, 2021 WL 2588873, at *4 (D. Colo. June 24, 2021) (citing Fed. R. Civ. P. 23(e)(2)). "To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that

the settlement is fair and reasonable." *Id.* (citing *Rutter*, 314 F.3d at 1188). "If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable." *Id.* The Court may also consider the fact that no objections were filed by any class members. *Rothe*, 2021 WL 2588873, at *4 (citing *In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 372 (S.D. Ohio 1990) for proposition that "[t]he Court gives these factors substantial weight in approving the proposed settlement").

Because all of the factors from *Rutter* are satisfied in this case, the Court should approve the Settlement.

### A. THE SETTLEMENT WAS FAIRLY AND HONESTLY NEGOTIATED.

The fairness of a settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Rothe*, 2021 WL 2588873, at *4 (citing *Ashley v. Regl Transp. Dist.,* No. 05-cv-01567- WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008). "The primary concern is the protection of class members whose rights may not have been given adequate consideration during settlement negotiations. *Id.* (citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997) and *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)); *cf. Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 2650037, at *3 (D. Colo. June 30, 2010) (settlement was fairly and honestly negotiated where the "parties entered into the agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues").

Price and the Defendants have vigorously litigated the legal and factual issues in the case, including conditional certification under 29 U.S.C. § 216(b), the plausibility and propriety of their

respective claims, and the viability of the case as a class action under Fed. R. Civ. P. 23. They engaged in a meaningful exchange of information through informal discovery prior to the Settlement Conference. They have carefully analyzed and evaluated the strengths and weaknesses of their respective claims and defenses, as well as the information exchanged during discovery. They then participated in the Settlement Conference with Magistrate Judge Crews, obtaining additional information concerning the facts, law, and their respective positions and theories in the case. When the Settlement Conference did not resolve this action, the Parties continued to litigate, and conducted formal written discovery.

The Parties intensely and rigorously negotiated the terms of the Settlement during the Settlement Conference and thereafter. At all times during this process, the Parties and their counsel dealt with each other at arms-length, without engaging in any form of collusion or self-dealing and are confident as to the fairness of the Settlement.

Under these circumstances, the first *Rutter* factor is satisfied. *See Rutter*, 314 F.3d at 1188.

**B.** **SERIOUS QUESTIONS OF LAW AND FACT PLACE THE ULTIMATE OUTCOME IN DOUBT.**

In analyzing the second factor from *Rutter*, the Court must determine whether the Parties could reasonably conclude that serious questions of law and fact exist; this does not, however, require the Court to evaluate the actual merits of the case. *See Lucas*, 234 F.R.D. at 693-94. As Courts in this District have recognized in approving class settlements, "to continue through trial would expose the Parties to significant risks." *Rothe*, 2021 WL 2588873, at *5 (citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997)). "Indeed, the one constant about litigation… is that the ultimate jury result is uncertain, unknown and unpredictable." *Wilkerson*, 171 F.R.D. at 285

Case 2:20-cv-12068-OMA-SKM Document 83 Filed 12/16/21 Page 11 of 18
Case No. 1:19-cv-01768-DDD-SKC Document 89-1 Filed 12/16/21 USDC Colorado Page 11 of 42
pg 11 of 42

In this case, there are at least six legal and factual issues that place the outcome in doubt. First and foremost, the Parties dispute whether the apartment locators were properly classified as "independent contractors," or whether they should have been classified as "employees" under the FLSA and Colorado Wage and Hour Law. *See* 29 U.S.C. § 203(d); C.R.S. § 8-4-101(5). This is an issue of fact that would require the Court and/or the jury to determine the "economic reality" of the Parties' relationships, applying numerous factors such as the "degree of control" exercised by the Defendants. *See Baker v. Flint Engg Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). While the undersigned firmly believes that Barrett would ultimately prevail, and, on the other hand, the Defendants vigorously contend they would prevail on this claim, there is a risk that the finder of fact could find against either Party on this key issue.

Second, the Parties dispute whether Wiggin, individually, was an "employer" under the FLSA and C.R.S. § 8-4-101(6), as amended, *i.e.*, that he: (1) had the power to hire and fire employees; (2) determined the apartment locators' rates of pay and methods of payment; (3) supervised and controlled the conditions of the locators' employment; and (4) exercised a high level of operational control. *See Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1189–90 (D. Colo. 2012). Wiggin filed a motion to dismiss the claims against him under Fed. R. Civ. P. 12(b)(6), asserting that the Amended Complaint did not meet the "plausibility" standard. ECF No. 64.

Third, the Parties dispute the number of hours the apartment locators worked, and thus the damages to which they would be entitled if they prevailed in this action. However, neither Party has complete and accurate records of the locators' hours, because no Parties created and kept such records. Under these circumstances, Barrett (and eventually, the Court) would need to establish

the hours worked "as a matter of just and reasonable inference." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016); *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Metzler v. IBP, Inc.*, 127 F.3d 959, 962–63 (10th Cir. 1997); *McGrath v. Cent. Masonry Corp.*, No. 06-cv-00224-CMA-CBS, 2009 WL 3158131, at *7 (D. Colo. Sept. 29, 2009).

Fourth, it is not certain that Barrett would be able to meet the standards for class or collective certification in the absence of the Parties' stipulation for the purposes of the Settlement. *See* Fed. R. Civ. P. 23 (a)-(b); 29 U.S.C. § 216(b); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). The Defendant has alleged that the apartment locators were not "similarly situated" and that they cannot satisfy the requirements of Rule 23(a) in a contested motion. *See* ECF No. 49 at 6. If the Court found against Barrett on any of these issues, it would diminish or eliminate the apartment locators' ability to pursue their claims as a class action.

Fifth, the Parties dispute whether the locators were "authorized and permitted" to take compensated 10-minute rest periods, as required by Colorado Wage and Hour Law. *See* 7 C.C.R. 1103-1, Rule 5 (2020-21); 7 C.C.R. 1103-1:8 (2017-19). The Defendants have argued that some of the apartment locators worked from home, where the Defendants would not be likely to control whether they took breaks. This issue could complicate class certification and/or the liability and damages questions in the case.

Sixth, Barrett would have to establish that the Defendants' violations were "willful" for a three-year statute of limitations to apply to the apartment locators' federal claims. *See* 29 U.S.C. § 255; *see also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1008 (D. Colo. 2014) (holding that dispute regarding applicable statute of limitations weighed in favor of final approval). This would require a showing that the Defendants "knew or showed reckless disregard for whether"

their conduct violated the wage and hour laws. *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011). The undersigned counsel is confident that he could meet this burden, however, it is possible that the Court or the jury could find against him and refuse to apply the three-year statutes of limitations.

In light of these factual and legal disputes, the Parties' decision to agree to the Settlement was and is fair and reasonable. *See Rutter*, 314 F.3d at 1188.

### C. THE VALUE OF AN IMMEDIATE RECOVERY OUTWEIGHS THE MERE POSSIBILITY OF FUTURE RELIEF.

The "value of an immediate recovery" means the "monetary worth of the settlement." *Rothe*, 2021 WL 2588873, at *6 (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002)). "This value should be measured against 'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'" *Id.*

As discussed above, there are numerous issues of law and fact to be decided in this case. The Court or jury could find against Barrett and the Class Members on any of these issues, resulting in a lesser (or zero) recovery. *See Rothe*, 2021 WL 2588873, at *6 (citing *Oppenlander v. Standard Oil Co.)*, 64 F.R.D. 597, 624 (D. Colo. 1974) for proposition that "it is prudent for the parties to take the bird in the hand instead of a prospective flock in the bush"); *see also Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial .... Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation"). Additionally, due to the small size of the Defendants' business and the difficulties

13

currently existing throughout the Colorado economy due to the pandemic, to which the Defendants

have not been immune, there is a risk that the Defendants would not be able to pay a judgment that

was higher than the Total Settlement Amount.

    In light of these legitimate risks of litigation, the value of the Settlement, which will allow

each Settlement Class Member to be paid $172.09 (14 hours of pay at the Colorado minimum

wage) for each month that they worked during the Relevant Period, outweighs the possibility that

they could recover more at trial.

### D.  THE PARTIES AGREE THAT THE SETTLEMENT IS FAIR AND REASONABLE.

    Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels judgment

as to the fairness of the agreement is entitled to considerable weight." *See Rothe*, 2021 WL

2588873, at *6; *Lucas*, 234 F.R.D. at 695. Counsel for the Parties are experienced counsel

specializing in wage and hour claims, including class actions, such as those alleged in this action.

Class Counsel have litigated dozens of such cases over the past seven years.[5] They have carefully

---

[5] The cases litigated by counsel include, but are not limited to: *Finfrock v. DISH Network, LLC,* JAG Case No. 2021-0409A; *Mess v. Aquila Corporation*, No. 1:21-cv-01462-RM-NYW (D. Colo.); *Anderson v. WidespreadGanick, LLC*, No. 2021CV031699 (Den. Dist Ct.); *Simmons v. Isle of Capri Black Hawk, LLC*, No. 1:19-cv-00967-JLK (D. Colo.); *German v. Holtzman Enterprises, Inc.*, 19-cv-03540-PAB-STV (D. Colo.); *Price v. Vita Locators, LLC*, No. 1:20-cv-01868-CMA-SKC (D. Colo.); *Picknell v. Hard Rock Café International, Inc.*, No. 1:20-cv-03409-DDD-SKC (D. Colo.); *Barlow v. Westin DIA Operator, LLC*, No. 20-cv-01612-DDD-KLM (D. Colo.); *Jones v. Intrado Life & Safety, Inc.*, No. 1:20-DDD-NYW (D. Colo.); *Price v. The Murder Mystery Company, LLC*, No. 1:20-cv-1081 (W.D. Mich.); *Garechana v. Summit Subway, LLC,* 2019CV032622 (El Paso Dist. Ct.); *Williams v. Sabell's,* No. 2019CV031879 (Jefferson Dist Ct.); *Banton v. Board of Governors of the Colorado State University,* No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC,* No. 18CV33524 (Den. Dist. Co.); *Sciarcon v. Colorado Seminary*, No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile,* No. 2020CV030841 (Den. Dist. Ct.); *Pilmenstein v. Devereux Cleo Wallace,* No. 2017CV30319 (Jefferson Dist. Ct.) (affirmed by 2021 COA 59); *Ortez v. United Parcel Service,* No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary,* No. 17-cv-02074 (D. Colo.); *Gallagher v. Total Community Options, Inc.,* No. 2017CV030953 (Den. Dist. Ct.); *Collins v. DKL Ventures,* LLC, No. 16-cv-00070 (D.

analyzed and evaluated the strength and weaknesses of each Parties' claims and defenses, as well as the information exchanged by the Parties in formal and informal discovery. Based on their experience and careful analysis, counsel for the Parties have concluded that the Settlement is in the best interests of the Parties, and particularly the Settlement Class Members.

"The fact that no class member objects shows that the class also considers this settlement fair and reasonable." *See Id.* (citing *In re Dun & Bradstreet*, 130 F.R.D. at 372). Additionally, not one Settlement Class Member has opted out of the Settlement. *See id.* (taking into consideration fact that less than 5% had opted out in approving class settlement). Accordingly, the Court can and should conclude that the fourth *Rutter* factor is satisfied. *See Rutter*, 314 F.3d at 1188.

## 2. REQUEST TO APPROVE SERVICE AWARD FOR VICTORIA PRICE

"[N]amed plaintiffs... are eligible for reasonable incentive payments as part of a class action settlement." *Pliego*, 313 F.R.D. at 131 (citing *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003); *see Tuten,* 41 F. Supp. 3d at 1010 (citing *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 187 (W.D.N.Y. 2005) for proposition that "service awards are especially appropriate in employment litigation where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

---

Colo.); *Bowers v. Tension International, Inc.*, 16-0562-CV (W.D. Mo.); *VanPortfliet v. Carpet Direct Corporation*, No. 16-cv-00616 (D. Colo.); *Flannery v. Int Entertainment Consultants, Inc.*, No. 2016CV034325 (Den. Dist. Ct.); *Price v. Sprouts Farmers Market, LLC*, No. 16-cv-00855 (D. Colo.);*Crepeau v. PDQ Truck, LLC,* 1:15-cv-02750-CMA-MLC (D. Colo.) *Garrison v. Open Technology Solutions, LLC*, No. 2015CV030837 (Arapahoe Dist. Ct.); *Nesbitt v. FCHN, Inc.,* No. 14-cv-0090 (D. Colo.); and *Geiger v. Master United 12 LLC*, No. 14-cv-00240 (D. Colo.).

Price devoted many dozens of hours to providing information and assistance to Class Counsel in this case. She undertook considerable personal and professional risk, at a very young age and in a small market (apartment locators) to bring this action. She attended a Settlement Conference on behalf of the Settlement Class Members, and then participated in several months of vigorous negotiations. As a result of her efforts, every Settlement Class Member will be able to obtain a payment that the undersigned believes to be fair and reasonable. Moreover, during dozens of communications with Class Counsel over the past three months, the Settlement Class Members have lauded Price for her efforts and expressed gratitude for the Settlement she negotiated. Under these circumstances, approval of the $7,500.00 Service Award designated to Price is appropriate. *See Pliego*, 313 F.R.D. at 131 ($7,500.00 service award "is appropriate and is commensurate with awards in similar cases); *Prim v. Ensign United States Drilling, Inc.*, No. 15-CV-02156-PAB-KMT, 2019 WL 4751788, at *5 (D. Colo. Sept. 30, 2019) (same); *see also Tuten*, 41 F. Supp. 3d at 1010 (approving $15,000.00 award); *Peace Officers Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-CV-0304-WJM-NRN, 2021 WL 1387110, at *7 (D. Colo. Apr. 13, 2021) (approving $10,000.00 to each of the lead plaintiffs); *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-NRN, 2020 WL 4057585, at *2 (D. Colo. July 20, 2020) (approving $20,000 service award for each of six plaintiffs).

## **CONCLUSION**

Because the Parties' Settlement is "fair, reasonable, and adequate" under the standards set forth in *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002), and because the Service Award to Victoria Price is appropriate, the Parties respectfully ask the Court to grant final approval of the Settlement and order that:

(I)     No later than 90 days from the date of the Court's Order granting final approval, the Defendants shall pay a Total Settlement Amount of $165,000.00 to the Settlement Class Members, the Estate of Victoria K. Price, and Class Counsel by distributing that Total Settlement Amount in accordance with the terms of the Parties' Settlement Agreement (ECF No. 72-1);

(II)    The Defendants' counsel shall be responsible for the distribution of the Total Settlement Payment checks to the Settlement Class Members, the Estate of Victoria K. Price, and Class Counsel in accordance with the Settlement Agreement and the Court's Order;

(III)   If the settlement check sent to any Class Member is returned as undeliverable, Class Counsel shall conduct skip-tracing and other reasonable efforts to locate and provide the settlement check to any Settlement Class Members whose settlement checks are initially returned undeliverable and shall request and receive from the Defendants all of the contact information in the Defendants' possession for that Class Member, so that Class Counsel may provide them with an opportunity to obtain their payments from the Settlement. If 120 days pass after any check is issued or re-issued to a Class Member, and the Class Member has not cashed the check, those funds shall revert to the Defendants in accordance with the Settlement Agreement; and

Case 1:20-cv-01863-SKC Document 89-1 Filed 12/16/21 USDC Colorado Page 18 of 18
Case No. 1:20-cv-01863-SKC Document 89 Filed 11/19/21 USDC Colorado Page 18 of 42
pg 18 of 42

(IV)    This action, and all claims asserted in this action, are dismissed with

prejudice.

A proposed order is attached.

Respectfully submitted on this 19th day of November, 2021.

| | |
|---|---|
| */s/Adam M. Harrison* | */s/Rebecca B. DeCook* |
| Adam M. Harrison (#50553) | Rebecca B. DeCook (#14590) |
| Claire E. Hunter (#39504) | Lucas T. Ritchie (#35805) |
| **HKM Employment Attorneys LLP** | Caleena S. Braig (#51762) |
| 730 17th Street, Suite 750 | **MOYE WHITE LLP** |
| Denver, CO 80202 | 1400 16th Street, 6th Floor |
| Phone: (720) 668-8989 | Denver, CO 80202 |
| aharrison@hkm.com | Phone: (303) 292-2900 |
| chunter@hkm.com | becky.decook@moyewhite.com |
| *Attorneys for Plaintiff Victoria Price* | luke.ritchie@moyewhite.com |
| *individually and on behalf of all others* | caleena.braig@moyewhite.com |
| *similarly situated* | *Attorneys for Defendants Vita Locators, LLC* |
| | *and Andrew Wiggin* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November 2021, a true and correct copy of the foregoing **Joint Motion Seeking Final Approval of Class Action Settlement and Service Award for Victoria Price** was served via email on the following:

Rebecca B. DeCook (#14590)
Lucas T. Ritchie (#35805)
Caleena S. Braig (#51762)
MOYE WHITE LLP
1400 16th Street, 6th Floor
Denver, CO 80202
Phone: (303) 292-2900
becky.decook@moyewhite.com
luke.ritchie@moyewhite.com
caleena.braig@moyewhite.com
*Attorneys for Defendants*

*/s/ Naisha Rodriguez*
Naisha Rodriguez
Paralegal

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01868-CMA-SKC

KEMAR BARRETT, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

VITA LOCATORS, LLC, APARTMENT GUYZ, LLC, and
ANDREW WIGGIN,

Defendants

## ORDER GRANTING JOINT MOTION SEEKING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND SERVICE AWARD FOR VICTORIA PRICE

This matter comes before the Court on the Joint Motion Seeking Final Approval of Class Action Settlement and Service Award for Victoria Price. Having reviewed the Motion and being fully advised on the premises, the Court hereby GRANTS the Motion and ORDERS that:

I.    The Court finds that: (1) the Parties' Settlement was fairly and honestly negotiated; (2) the Parties' judge the Settlement to be fair and reasonable; (3) serious questions of law and fact exist and place the ultimate outcome of the litigation in doubt; and (4) the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Accordingly, the Court APPROVES the Settlement;

1

II.     No later than 90 days from the date of this Court's Order, the Defendants shall pay a Total Settlement Amount of $165,000.00 to the Settlement Class Members, the Estate of Victoria K. Price, and Class Counsel by distributing that Total Settlement Amount in accordance with the terms of the Parties' Settlement Agreement (ECF No. 72-1);

III.    The Defendants' counsel shall be responsible for the distribution of the Total Settlement Payment checks to the Settlement Class Members, the Estate of Victoria K. Price, and Class Counsel in accordance with the Settlement Agreement and the Court's Order;

IV.     If the settlement check sent to any Class Member is returned as undeliverable, Class Counsel shall conduct skip-tracing and other reasonable efforts to locate and provide the settlement check to any Settlement Class Members whose settlement checks are initially returned undeliverable and shall request and receive from the Defendants all of the contact information in the Defendants' possession for that Class Member, so that Class Counsel may provide them with an opportunity to obtain their payments from the Settlement. If 120 days pass after any check is issued or re-issued to a Class Member, and the Class Member has not cashed the check, those funds shall revert to the Defendants in accordance with the Settlement Agreement; and

V.      This action, and all claims asserted in this action, are dismissed with prejudice.

DATED this _____ day of November, 2021.

BY:

_____
CHRISTINE M. ARGUELLO
UNITED STATES DISTRICT JUDGE

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and between Victoria Price, individually and as Class Representative ("Price"), on the one hand, and Vita Locators, LLC ("Vita") and Andrew Wiggin ("Wiggin") (collectively, "the Vita Defendants") on the other hand. Price and the Vita Defendants are collectively referred to in this Agreement as "the Parties."

### RECITALS

A.    On June 24, 2020, Price filed an Individual, Class and Collective Action Complaint in the United States District Court for the District of Colorado ("Court") alleging that Vita violated her rights and the rights of the other apartment locators under the Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Claim Act, C.R.S. § 8-4-101 et *seq.*, the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.*, the applicable Colorado Minimum Wage Orders, 7 C.C.R. 1103-1 (2017-2019), and the Colorado Overtime and Minimum Pay Standards Order, 7 C.C.R. 1103-1 (2020) (collectively, "Colorado Wage and Hour Law"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

B.    As set forth in Price's First Amended Complaint, the Vita Defendants and Apartment Guyz, LLC ("Apartment Guyz") violated Colorado Wage and Hour Law and the FLSA by: (1) failing to pay apartment locators federal minimum wages for some of the hours that they worked; (2) failing to pay them overtime compensation; (3) failing to pay them Colorado minimum wages for some of the hours that they worked; and (4) failing to provide them with compensated rest periods.

C.    Individually, Price alleges that Vita failed to timely remit payment of wages she demanded pursuant to C.R.S. § 8-4-109.

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

D.      Price's individual, class, and collective action is currently pending before the Court as *Price et al. v. Vita Locators*, 1:20-cv-01868-CMA-SKC ("Lawsuit"). The honorable Judge Christine M. Arguello and Magistrate Judge S. Kato Crews preside over the Lawsuit.

E.      Vita filed Answers to Price's Complaint and First Amended Complaint denying Price's allegations and further denying that it violated Price's or the apartment locators' rights in any way. Vita also filed counterclaims against Price and third-party claims against Victoria Price, LLC, including civil theft, conversion, negligent misrepresentation, and unjust enrichment – all related to Vita's assertion that Price sought and received payments under C.R.S. § 8-4-109 that were not due to her. Wiggin filed a motion to dismiss Price's claims against him. Apartment Guyz has not been served with process, has not appeared in the Lawsuit, and thus, is not currently a party to the Lawsuit. However, claims against Apartment Guyz are being released as part of this Agreement.

F.      The Parties engaged in early settlement discussions and jointly requested a Settlement Conference on September 4, 2020. A Settlement Conference was conducted by Magistrate Judge Crews on November 4, 2021. While the Parties were unable to reach a resolution at that Conference, they continued their good-faith efforts to reach an amicable resolution during four months of discovery and litigation until they reached the terms memorialized in this Agreement on March 18, 2021.

G.      The Vita Defendants represent that 38 individuals have worked for Vita as apartment locators between January 1, 2018 and the Effective Date (as defined herein) ("Locators" or "Class Members").

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

H.      The Parties now desire to fully and finally settle and completely resolve the Lawsuit, and all claims that were brought or could have been brought in the Lawsuit on the terms and conditions set forth herein ("Settlement").

I.      Price and her counsel have carefully analyzed Price's and the Class Members' claims, the legal and factual issues in the Lawsuit, the documents produced in discovery, the Vita Defendants' arguments in their briefs and at the Settlement Conference, and the Vita Defendants' ability to pay a judgment. Having done so, and in light of the risks of litigating the Lawsuit to trial, Price and her counsel are satisfied that the Settlement is fair, reasonable, adequate, and in the best interests of the Class Members.

J.      The Vita Defendants, while continuing to dispute the allegations in the Lawsuit, consider it desirable to resolve the Lawsuit on the terms stated herein in order to avoid further expense, inconvenience, and litigation, and thus have determined that settlement of the Lawsuit on the terms in this Agreement is in their best interests.

K.      This Agreement is subject to, and its effectiveness conditioned upon, final approval by the Court through an order granting final approval of the Settlement ("Final Approval Order") and other conditions precedent specified below.

L.      In the event the Court does not approve this Agreement, this Agreement shall be deemed null and void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or utilized by any Party for any purpose whatsoever. Further, the negotiation, terms, and entry of this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, and any other applicable analogous rules of evidence.

**NOW, THEREFORE**, for the good and valuable consideration described herein, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **No Admission of Liability:** By entering into this Agreement, the Vita Defendants do not admit any liability or wrongdoing, and they expressly deny the same. The Vita Defendants are entering into this Agreement for the purpose of avoiding the cost and uncertainty associated with ongoing litigation and to resolve all outstanding claims. Nothing in this Agreement shall be construed as or deemed to be an admission by the Vita Defendants of any liability, culpability, or wrongdoing.

2. **Total Settlement Payment:** In full and final settlement of the Lawsuit, and all claims which were brought or could have been brought in the Lawsuit arising out of any facts, transactions, occurrences, representations, or omissions alleged in the Lawsuit and in consideration of the release of claims set forth herein, the Vita Defendants shall pay a total of One Hundred Sixty Five Thousand Dollars ($165,000.00) to Price and the Class Members ("Total Settlement Payment"), to be disbursed in accordance with this Agreement and any applicable order of the Court. The Parties agree that the Total Settlement Payment shall include all claims for damages, attorney's fees, costs, and any service award payments to Price or any other individual, and that under no circumstances will the Vita Defendants be required to pay any amount other than the Total Settlement Payment and the employer's share of taxes described below. Payment of the Total Settlement Amount and the Vita Defendant's share of taxes set out in Paragraph 3 below shall be the sole financial obligation of the Vita Defendants under this Agreement.

3. **Taxes:** In addition to the Total Settlement Payment, the Vita Defendants will pay the full amount of any employer share of payroll taxes on wage payments made

to the Class Members. The Parties agree that such payroll taxes shall only be paid with respect to amounts allocated as wages. For amounts that are not allocated as wages, including Service Award sought for the Class Representative and reasonable attorneys' fees and costs, Class Members shall be individually responsible for payment of their share of any applicable taxes.

4.      Beyond the payments to be made by the Vita Defendants described in Paragraph 2 and 3, the Vita Defendants shall not have any liability or responsibility for any taxes, penalties, or interest associated with any payments made pursuant to this Agreement or for the reporting associated with such payments, including the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority. Class Members and Class Counsel agree that the allocation and distribution of the Settlement Payment Amounts, the Wage Payments, the 1099 Payments, the Service Award, and the calculation of the reasonable attorneys' fees and costs, are solely matters between the Class Members and Class Counsel, and the Vita Defendants have no responsibility or liability related thereto.

5.      The Vita Defendants make no representations or warranties with respect to the tax consequences of any payments made pursuant to this Agreement. Class Members acknowledge and agree that the payments set forth herein may result in taxable income to Class Members under applicable federal, state, and/or local tax laws.  Class Members shall be responsible for any taxes, penalties, or interest that may be assessed against them relating to the payments made pursuant to this Agreement, and Class Members shall not assert any claims against the Vita Defendants relating to any liability under any tax law or regulations, nor seek any indemnification or reimbursement from the Vita Defendants

with respect thereto. Nothing in this Agreement is intended to constitute legal advice or tax advice. To the extent that this Agreement is interpreted to contain or constitute advice regarding any federal tax issue, such advice is not intended to be used, and cannot be used, by any person for the purpose of avoiding penalties under the Internal Revenue Code. Each Class Member assumes full responsibility for correctly characterizing for tax purposes all payments received pursuant to this Agreement and for paying any taxes, penalties, or interest due on amounts received pursuant to this Agreement.Specifically with respect to the 1099 Payments, should any government authority determine that all or any part of such payment is taxable as wages, Class Members shall be solely responsible for the payment of any such taxes deemed to be owed.

6.     **Timing of Total Settlement Payment:** The Vita Defendants shall remit the Total Settlement Payment to Price, the Class Members, and the undersigned attorneys at HKM Employment Attorneys LLP ("Class Counsel") in accordance with the Final Approval Order no later than 90 days from the date on which the Court enters the Final Approval Order, if no timely appeal of the Order is filed, as follows: (1) a payroll check payable to each Class Member, less all applicable taxes and other withholdings (including, *inter alia*, the employer's portion of FICA, SUTA, and FUTA) and for which Vita will issue an IRS Form W-2 ("Wage Payment");[1] (2) a non-payroll check to each Class Member for the 1099 Portion of the Total Payment Amount, which amount has been determined by Plaintiffs to represent non-wage recovery of liquidated damages, which will be free of any deduction, and for which Vita will issue an IRS Form 1099 to the

---

[1] The Payment to Price on her Individual Claim will be paid to Price as part of the Wage Payment.

4813-2059-4153.1

Class Members ("1099 Payment"); (3) a non-payroll check for the Service Award to Price, which will be free of any deduction, and for which Vita will issue an IRS Form 1099 to Price ("Service Award"); and (4) a check to Class Counsel in the total amount of $52,966.00 (or whatever amount the Court deems reasonable) for attorneys' fees and expenses, which will be paid without withholding and for which Class Counsel shall provide to the Vita Defendants for this purpose an IRS Form W-9.

7.      If a Class Member timely appeals the Final Approval Order, the Vita Defendants shall remit the Total Settlement Payment no later than 30 days from the date on which any such appeal is finally resolved in favor of final approval of this Settlement.

8.      The Vita Defendants' Counsel is responsible for distribution of the Total Settlement Payment checks to the Class Members and to Class Counsel or in accordance with the Court's order granting preliminary approval and the Final Approval Order.

9.      **Distribution of Total Settlement Payment**: Subject to preliminary approval and the Final Approval Order of the Court, the Parties anticipate that the Total Settlement Payment shall be distributed by the Vita Defendant's Counsel as follows:

A.  <u>Wages and Damages to Settlement to Class Members</u>: In exchange for a universal release of any claims Price or the Class Members brought or could have brought against the Vita Defendants or Apartment Guyz under the FLSA or Colorado Wage and Hour Law, on behalf of the Vita Defendants, Wage Payments and 1099 Payments approved in the Final Approval Order to Price and the Class Members in accordance with this Agreement and any applicable Court order. The Parties will propose that half of the payment made to each Class Member shall be the Wages Payment, subject to regular

tax withholdings, for which the Class Member will receive an IRS Form W-2 from Vita Defendants' Counsel and the other half of the payment shall be the 1099 Payment, for which the Class Members will receive an IRS Form 1099 from Vita Defendants' counsel. The total amount of wages and damages to be paid to Class Members in the Wages Payment and 1099 Payment is;

**$100,334.00**

B. <u>Victoria Price's Individual Claims</u>: In exchange for a universal release of any and all claims Price brought or could have brought against the Vita Defendants and/or Apartment Guyz, including her claim for statutory penalties under C.R.S. § 8-4-109, but not including any distribution to Price under Paragraph A above, payment approved in the Final Approval Order to Price in the amount of $7,500 less 1/3 attorneys' fees, for a total monetary payment to Price of;

**$5,000.00**

C. <u>Service Award</u>: Class Counsel shall move the Court to approve, and the Vita Defendants shall not oppose, payment of Service Award of $7,500.00 to Price for her time, efforts, and risk undertaken on behalf of the Class Members. The total monetary payment for the Service Award is;

**$7,500.00**

D. <u>Reasonable Attorneys' Fees and Costs</u>: Class Counsel shall move the Court to approve, and the Vita Defendants shall not oppose, the payment of reasonable attorneys' fees representing no more than 1/3 of the Total

Settlement Payment, plus costs of litigation (currently $800.00) for a total monetary payment to Class Counsel of;

$52,966.00

**Total Settlement Payment:      $165,000.00**

Class Counsel shall determine the distribution of the Total Settlement Payment and seek final approval of that distribution from the Court. The Court shall be the final arbiter of whether the proposed distribution is fair.

10.     **Reclassification of Locators:** In addition to the Total Settlement Payment, Vita also agrees to reclassify all individuals currently working for it as Locators as "employees," who will be subject to the applicable sections of the FLSA and Colorado Wage and Hour Laws, to be effective by the later of September 30, 2021 or 90 days following Final Approval by the Court.

11.     **Class Certification for Settlement Purposes:** The Parties agree, for the purposes of effectuating the Settlement described herein, the Court should certify a class under Fed. R. Civ. P. 23 consisting of all Class Members, i.e., all individuals who provided services to Vita as apartment locators between January 1, 2018 and the Effective Date of this Agreement. Class Counsel shall file an unopposed motion to certify the Class, which the Vita Defendants shall have the opportunity to review prior to its filing, and which the Vita Defendants shall not oppose.

12.     **Notice and Settlement Administration:** The Parties agree that due to the size and nature of the Class, and the potential undue expense to the Class of paying for settlement administration, Class Counsel and the Vita Defendant's counsel will work cooperatively to send notice to the Class Members, and administer notice under

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

procedures approved by the Court. If for any reason the Court orders the Parties to hire a third-party administrator to perform any of these duties, the Parties agree to negotiate with each other regarding the manner in which those costs will be split between the Parties.

13.    **Court Approval, and Notice:** Class Counsel shall file unopposed motions for preliminary and final approval of this Settlement, which shall be provided to the Vita Defendants' counsel prior to their filing, and which shall propose the following procedures for providing notice to the Class Members, exclusion of Class Members, objections, and final approval:

  A. <u>Production of Class Information</u>: Within seven days of the execution of this Agreement, the Vita Defendants will provide a Class List that includes the names, dates each Class Member provided services to Vita and last known mailing address (if known) of each Class Member;

  B. <u>Preliminary Approval</u>: Within the time ordered by the Court, Class Counsel shall file an unopposed motion seeking preliminary approval of this Settlement, along with notice and opt-out forms ("Notices") jointly drafted by the Parties and a proposed order. The Vita Defendants' counsel shall be permitted to review these documents and propose changes before they are filed;

  C. <u>Sending of Notice</u>: Within 14 days of the Court's preliminary approval of the Settlement, Class Counsel shall send the Notices approved by the Court to all Class Members using the contact information previously provided by the Vita Defendants. The Settlement Class Members shall have 45 days

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

from the date on which the Notices are mailed to opt out, object to, or remain in the Class and the Settlement. Class Counsel shall update the Defendant's counsel on a biweekly basis regarding any opt-outs or objections they have received, and will provide the Defendant's counsel with the documents filed in support of any opt outs or objections. Class Counsel shall conduct skip-tracing and other reasonable efforts to locate and provide the Notices to any Settlement Class Members whose Notices are initially returned undeliverable. The Vita Defendants will cooperate with these efforts by providing Class Counsel with all contact information in their possession for those Class Members. Class Counsel will re-send the Notices one time to any Settlement Class Members for whom additional contact information was found through skip tracing and/or Class Counsel's other reasonable efforts;

D. <u>Final Fairness Hearing</u>: After the 45-day notice period expires, the Parties will attend a Final Fairness Hearing on a date to be determined by the Court and included in the Notices; and

E. <u>Final Motions</u>: At least 14 days before the Final Fairness Hearing, Class Counsel will file motions seeking final approval of the Settlement and approval of reasonable attorneys' fees, costs, and service award ("Final Motions").

14. Any Party may terminate this Settlement Agreement if: (1) the Court declines to approve this Agreement; (2) the Court's entry of the Approval Order is reversed or substantially modified on appeal; or (3) the Settlement as agreed upon does

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

not become final for any other reason, provided the Parties agree to work cooperatively and in good faith for a period of fourteen (14) calendar days to address and resolve any concerns identified by the Court or a court of appeals in declining to approve this Agreement in the form submitted by the Parties.

15.　　To terminate this Agreement as specified above, the terminating Party shall give written notice to the other Party no later than ten (10) calendar days after the terminating Party learns that the applicable ground for termination has been satisfied.

16.　　If this Agreement is barred by operation of law, is invalidated, is not approved, or otherwise is ordered not to be carried out by any court: (1) the Agreement shall have no force or effect, and no Party shall be bound by any of its terms; (2) the Vita Defendants shall have no obligation to make any payments to any Party, Class Member of Class Counsel; (3) any Party may move to vacate the Approval Order or judgment; (4) neither this Agreement, nor any ancillary documents, actions, statements, or filings in furtherance of settlement shall be admissible or offered into evidence in the Lawsuit or any other action for any purpose whatsoever; (5) the Parties agree to cooperate in asking the Court to set a reasonable schedule for the resumption of the Lawsuit; and (6) the Parties reserve all rights, claims, defenses, and appeals that they may have, including but not limited to their rights, claims, defenses, and appeals with respect to whether the Lawsuit should proceed as a collective action, class action, and the membership of the collective action or class action.

17.　　**Reversion:** If any Class Member opts out or otherwise excludes themselves from the Class and the Settlement, the amounts of wages and damages apportioned to that Class Member shall be reapportioned to the remaining Class Members who do not opt out

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

or exclude themselves from the Class. If the notice and/or settlement check sent to any Class Member is returned as undeliverable, Class Counsel shall conduct skip-tracing and other reasonable efforts to locate and provide the Notices to any Settlement Class Members whose Notices are initially returned undeliverable shall request and receive from the Defendants all of the contact information in the Defendants' possession for that Class Member, so that Class Counsel may attempt to contact the Class Members to provide them with notice and/or an opportunity to obtain their payments from the Settlement. The Parties agree that the checks sent to Class Members shall become stale 120 days after they are sent to the Class Members. If 120 days pass after any check is issued or re-issued to a Class Member, and the Class Member has not cashed the check, those funds shall revert to the Vita Defendants.

18.     **Mutual Release of Claims:** Upon issuance of the Final Approval Order, Price and all of the Class Members who do not opt out of the Settlement, and each of their respective agents, attorneys, employees, companies, successors, heirs, spouses, administrators, executors, partners, and assigns, hereby fully, irrevocably, and unconditionally release and forever discharge the Vita Defendants, Apartment Guyz, and their past, present and future agents, owners, representatives, shareholders, principals, employees, attorneys, accountants, contractors, managers, affiliates, parent corporations, subsidiaries, officers, directors, members, predecessors, successors, heirs, executors, and assigns ("collectively, "Defendant Released Parties") from any and all past, present and future suits, actions, causes of action, claims, damages, awards, legal, equitable or administrative relief, interest, rights or demands that were brought, or could have been brought in the Lawsuit, whether known or unknown. Conditioned on dismissal of the

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

Lawsuit with prejudice, the Vita Defendants, their past, present and future agents, owners representatives, shareholders, principals, employees, attorneys, accountants, contractors, managers, affiliates, parent corporations, subsidiaries, officers, directors, members, predecessors, successors, heirs, executors, and assigns, hereby release and forever discharge Price, and each of her agents, attorneys, employees, companies, successors, heirs, spouses, administrators, executors, partners, and assigns (collectively, "Price Released Parties"), from any and all past, present and future suits, actions, causes of action, claims, damages, awards, legal, equitable or administrative relief, interest, rights or demands that were brought, or could have been brought in the Lawsuit, whether known or unknown (Defendant Released Parties and Price Released Parties are in hereinafter collectively referred to as the, "Released Parties"). All aforementioned claims are hereinafter defined as the "Released Claims."

19.     The Parties acknowledge that they are releasing certain claims against the Released Parties that are known and unknown, suspected and unsuspected, and discovered and undiscovered, and are aware that they may hereafter discover legal or equitable claims or remedies presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, including those with respect to the allegations and subject matters in the Lawsuit. Nevertheless, it is the intention of the Parties to fully, finally, and forever settle and release all Released Claims.

20.     This Agreement may be raised as a complete defense to and will preclude and bar any action or proceeding that is encompassed by this Agreement.

21.     The provisions regarding the Released Claims and Released Parties set forth above constitute essential and material terms of this Agreement.

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

22.    **Dismissal of Lawsuit:** In conjunction with Price's Final Motions seeking a Final Approval Order, Price will seek and obtain dismissal of the Lawsuit with prejudice and without costs and/or attorneys' fees, except as provided in this Agreement. This Agreement shall be contingent upon the Court granting a Final Approval Order and dismissing the Lawsuit with prejudice.

23.    **Communications with Class Members:** The Parties and the Vita Defendants' Counsel agree that they will not communicate with any Class Member regarding the Lawsuit or the Settlement, except to refer the Class Members to Class Counsel. The Parties acknowledge and agree that this is a material term of this Agreement.

24.    **No Retaliation:** The Parties agree that they will not retaliate against any person for participating in the Settlement, or for not opting out of the Settlement.

25.    **No Disparagement:** The Vita Defendants agree that they will not disparage Price or Kemar Barrett in communications with third parties, or encourage any other person or entity to do so. Likewise, Price agrees that she will not disparage the Vita Defendants or Apartment Guyz in communications with third parties, or encourage any other person or entity to do so. The Parties acknowledge and agree that this is a material term of this Agreement.

26.    **Other Matters:** Class Counsel hereby represent that neither they nor their co-counsel have any present intention to file any lawsuit or complaint against the Vita Defendants or Apartment Guyz, nor are they currently aware of any claims that could be brought against the Vita Defendants or Apartment Guyz, other than those described in the Lawsuit and/or released in this Agreement. Class Counsel further represent that they

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

believe it would be inconsistent with the Rules of Processional Conduct for them or their co-counsel to represent any putative Class Member who opts out of the Settlement.

27. **General Terms:**

a. *No Representation*. This Agreement controls over prior communications regarding the matters contained herein between the signatories hereto or their representatives. Except as expressly stated in this Agreement, no Party hereto has made any statement or representation to any other Party regarding any fact relied upon by any other Party in entering into this Agreement, and each Party specifically does not rely upon any statement, representation, or promise of any other Party in executing this Agreement.

b. *Knowing and Voluntary Consent*. All Parties have carefully read this Agreement, and the contents hereof are known and understood by all Parties. The Parties have each had the opportunity to receive independent legal advice from attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement. Each Party acknowledges they have executed the Agreement after independent investigation and without fraud, duress, or undue influence.

c. *Successors*. Subject to the provisions otherwise contained in this Agreement, this Agreement shall inure to the benefit of and binding upon the heirs, successors, and assigns of the respective Parties to this Agreement.

d. *No Assignments*. Each Party represents and warrants that she/he/it has not assigned or transferred, or purported to assign or transfer, to any person or entity, his/her/its rights in the Lawsuit or any interest therein, or any other interest in any claims or claims arising out of any of the matters that are the subject of the Recitals herein.

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

      e.     *Negotiated Agreements.* This Agreement and each of its terms constitutes a negotiated contract and not merely a recital and are the result of negotiation among the Parties. In interpreting this Agreement, there shall not be a presumption of interpretation against any Party.

      f.     *Warranty of Authority.* Each of the signatories hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom he or she purports to sign it.

      h.     *Applicable Law.* This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of Colorado without regard to conflicts of laws principles.

      i.     *Further Actions.* The Parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence, or confirm the agreements contained herein in the manner contemplated hereby. The Parties mutually agree to cooperate to ensure the expeditious approval and administration of this Settlement.

      j.     *Continuing Court Jurisdiction.* The Court shall have continuing jurisdiction to supervise and enforce the settlement set forth in this Agreement.

      k.     *Modifications.* As approved by the Court, this Agreement may not be modified in whole or in part except by an agreement in writing signed by all Parties and executed in the same manner as this Agreement and approved by the Court.

      l.     *Execution.* This document may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument, and may be transmitted via electronic scanning and email.

4813-2059-4153.1

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

m. *Entire Agreement.* This Agreement embodies the entire agreement and understanding of the Parties hereto with respect to the subject matter contained herein and is a fully integrated contract.

n. *Severability*. If any part of this Agreement is found to be illegal, invalid, inoperative, or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed, and enforced to affect the purposes thereof to the fullest extent permitted by law. If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

o. *Counterparts.* This Agreement may be executed in counterparts, each of which will be deemed an original and, when taken together with other signed counterparts, will constitute one Agreement.

p. *Effective Date*. This Agreement shall be deemed effective as of the last date of the last party to execute this Agreement ("Effective Date").

IN WITNESS WHEREOF, the Parties and their counsel have caused this Agreement to be duly executed.

[Parties' signatures on next page]

18

DocuSign Envelope ID: 960F56A8-81CB-4CB2-B79D-5E26FDBAA8C8

**VICTORIA PRICE, Individually**

**And as Class Representative**

_____

Dated: _____ 05/15/2021

**VITA LOCATORS, LLC**

By: _____
    8A580E4614F346D...

Dated: 5/19/2021
_____

**ANDREW WIGGIN**

_____
8A580E4614F346D...

Dated: 5/19/2021
_____

**APPROVED AS TO FORMS AND AS TO OBLIGATIONS OF COUNSEL:**

**HKM EMPLOYEMNT ATTORNEYS LLP**

By: _____*/s/ Adam M. Harrison*_____

Dated: ____5/17/2021_____

**MOYE WHITE LLP**

By: _____

 _*/s/ Abigail L. Brown*_____

Dated: ____05/17/2021_____

19

| Locator Name | Months of Work during Relevant Period | Payment |
|---|---|---|
| Alderman, Ashley | 30 | $5,162.98 |
| Barrett, Kemar | 23 | $3,958.29 |
| Belles, Ashlyn | 12 | $2,065.19 |
| Bristow, Julia | 8 | $1,376.80 |
| Brown, Annabelle | 2 | $344.20 |
| Button, Micah | 8 | $1,376.80 |
| Duncan, Austin | 12 | $2,065.19 |
| Findley, Shannon | 1 | $172.10 |
| Fox, Megan | 12 | $2,065.19 |
| Frechette, Matthew | 11 | $1,893.09 |
| Hornbacher, Brennan | 10 | $1,720.99 |
| Marman, Mary | 41 | $7,056.08 |
| Lewis, Allison | 11 | $1,893.09 |
| Marman, Kim | 41 | $7,056.08 |
| McCaffrey, Walter | 3 | $516.30 |
| Maynard, Janelle | 11 | $1,893.09 |
| Merickel, Thomas | 27 | $4,646.69 |
| Montoya, Marcus | 22 | $3,786.19 |
| Nicotra, Logan | 41 | $7,056.08 |
| Ouimette, Brittany | 8 | $1,376.80 |
| Parr, Ryan | 7 | $1,204.70 |
| Pearce, Cappy | 33 | $5,679.28 |
| Price, Victoria c/o Jeanne Price | 12 | $2,065.19 |
| Robertson, Amy | 6 | $1,032.60 |
| Sorenson, Herlof | 41 | $7,056.08 |
| Skelton, Ryan | 12 | $2,065.19 |
| Wales, Amy | 41 | $7,056.08 |
| Weseman, Patrick | 19 | $3,269.89 |
| Dooley, Kristi | 4 | $688.40 |
| Emmi, Lisa | 14 | $2,409.39 |
| Hartojo, Elysia | 12 | $2,065.19 |
| Heck, Kaylee | 1 | $172.10 |
| Hernez, Madison Rose | 11 | $1,893.09 |
| McCafferty, Julia | 11 | $1,893.09 |
| McElfresh, Kaleigh | 4 | $688.40 |
| Mast, Denise | 12 | $2,065.19 |
| Jones, Taylor | 1 | $172.10 |
| Rush, Naz | 8 | $1,376.80 |
| | **Total** | $100,334.00 |