IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-01868-CMA-SKC

KEMAR BARRETT, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

VITA LOCATORS LLC,
APARTMENT GUYZ, LLC, and
ANDREW WIGGIN,

    Defendants.

---

**ORDER GRANTING JOINT MOTION FOR FINAL SETTLEMENT APPROVAL AND PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEY FEES AND COSTS**

---

This matter is before the Court on the Parties' Joint Motion Seeking Final Approval of Class Action Settlement (Doc. # 83) and Plaintiff's Unopposed Motion for Attorney Fees and Costs (Doc. # 84). The Court, having reviewed the Joint Motion, Plaintiff's Unopposed Motion, and considered the arguments made during the Final Fairness Hearing, grants both motions.

**I.    BACKGROUND**

This is an employment dispute involving alleged violations of state and federal wage laws. Defendant Apartment Guyz, LLC ("Apartment Guyz") was an apartment-finding service that matched prospective renters with apartment vacancies. (Doc. # 62 at ¶¶ 24–29.) The business was essentially a paid referral service: when Apartment

Guyz placed a renter into an apartment, it would charge the landlord a percentage of the first month's rent. (Doc. # 62 at ¶ 24.) Defendant Vita Locators LLC ("Vita Locators") took over the business in January 2018. (Doc. # 62 at ¶ 15.) Defendant Andrew Wiggin was the Director of Apartment Guyz; he was also the owner, President, and CEO of Vita Locators. (Doc. # 62 at ¶¶ 2–4.)

In 2017 and 2018, Plaintiff Victoria Price was employed by Defendants as an "apartment locator." (Doc. # 62 at ¶¶ 28, 31.) Price's job involved posting apartment listings on Craigslist and communicating with prospective renters about the listings. (Doc. # 62 at ¶¶ 24–29.) According to Price, Defendants required her to work long hours without breaks and failed to pay her overtime wages and other benefits to which she was entitled. (Doc. # 62 at ¶¶ 40–7.) Price sued Vita Locators on her own behalf and on behalf of other similarly situated employees, alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201), the Colorado Wage Claim Act (Colo. Rev. Stat. § 8-4-101), and other Colorado wage laws and regulations (Colo. Rev. Stat. § 8-6-101). (Doc. # 1 at ¶ 1.)

Price's Complaint alleged that Vita: (1) failed to pay its employees the state or federal minimum wage for some of the hours they had worked; (2) failed to pay overtime compensation as required by law; and (3) failed to provide them with paid rest periods to which they were entitled. (Doc. # 83 at 3–4.) Price later amended her Complaint to add claims against Apartment Guyz and Wiggin. (Doc. # 62.) Price framed this lawsuit as a both a class action under Rule 23 of the Federal Rules of Civil Procedure and as a

collective action under the Fair Labor Standards Act ("FLSA"). (*See* Doc. # 62 at 1.) Price also asserted an individual claim for unpaid wages. (Doc # 62 at 21.)

Defendants denied Price's allegations and asserted counterclaims, alleging that Price had committed civil theft, conversion, negligent misrepresentation, and unjust enrichment. (Doc. # 63.) Defendants also asserted claims against Victoria Price LLC, a company owned by Price. (Doc. # 63.)

After about eleven months of litigation, the Parties notified the Court that they had reached a settlement. (Doc. # 72.) Defendants agreed to pay a total of $165,000 to the class members in exchange for a dismissal with prejudice of all claims against them. (Doc. # 72-1 at ¶ 2.) Defendants also agreed to dismiss their claims against Price and Victoria Price LLC. (Doc. # 72-1 at ¶ 18.)

The Parties filed a motion to certify the class for settlement purposes (Doc. # 72), which this Court granted on September 13, 2021 (Doc. # 75). The Court also approved the Parties' plan to provide notice to the class members. (Doc. # 75.) There was one outstanding motion pending at the time the settlement was reached—Defendant Andrew Wiggin's Motion to Dismiss (Doc. # 64)—which the Court denied as moot in light of the settlement. (Doc. # 75.)

Price passed away in August 2021, and Plaintiff Kemar Barrett was substituted as the named plaintiff and class representative. (Doc. ## 78, 82.)

On December 8, 2021, the Court ordered the Parties to show cause why the Final Fairness Hearing should not be postponed until after Defendants provided proof of compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b), including serving

notice of the settlement on the U.S. Attorney General and the Attorney General of Colorado. The Parties filed a joint response that same day, admitting that they had not provided the requisite notice, but requesting to file the notice after the Final Fairness Hearing. (Doc. # 87.)

On December 9, 2021, the Court held the Final Fairness Hearing. (Doc. # 88.) The court proceeded with the Final Fairness Hearing and permitted late mailing of notice to the U.S. Attorney General and the Attorney General of Colorado. The Court preliminarily granted the Joint Motion Seeking Final Approval of Class Action Settlement and Service Award for Victoria Price (Doc. # 83) and preliminarily granted Plaintiff's Unopposed Motion Seeking Attorneys Fees and Costs Pursuant to Settlement (Doc. # 84), pending satisfaction of the requirements of 28 U.S.C. § 1715(b). (Doc. # 88.)

On December 16, 2021, Defendants filed a Notice of Proposed Settlement. (Doc. # 89.) On December 17, 2021, Defendants filed a Status Report Regarding Compliance with 28 U.S.C. § 1715(b), informing the Court that Defendants served a notice of the proposed settlement on the U.S. Attorney General and the Attorney General of Colorado. (Doc. 90.)

On March 17, 2022, the Parties filed a Joint Status Report, informing the Court that "no Class Member has objected to the settlement." (Doc. # 91 at ¶ 5.) The Parties now seek final approval of the settlement. (*Id.*)

## II. THE SETTLEMENT AGREEMENT

The Parties' Settlement Agreement creates a Settlement Fund of $165,000.00, to resolve all claims that were brought or could have been brought by the Parties to the action. The distributions are as follows:

- $7,500 to be paid to the Estate of Victoria K. Price as a service award for her work as lead Plaintiff;
- $5,000 to be paid to the Estate of Victoria K. Price on Price's individual claims;
- $800 in litigation costs;
- $52,166 in attorney fees; and
- $100,334 in unpaid wages and other damages to be paid to the class members.

Further, the Parties anticipate that each Settlement Class Member will be paid $172.09 (14 hours of pay at the Colorado minimum wage) for each month that Class Member worked as an apartment locator for the Defendants during the relevant class period. Half of the total settlement payment made to each Class Member will be allocated as wages, for which the Defendants counsel will provide an IRS Form W-2. The other half of the total settlement payment will be allocated as non-wage damages, for which the Defendants' counsel will provide an IRS Form 1099.

In addition, Defendants will pay the employer's share of taxes due on the wages paid under the Settlement Agreement. Finally, Vita Locators agrees to reclassify all current apartment locators as employees. (Doc. # 72-2 at ¶¶ 9–10; Doc. # 83 at 5–7.)

Due to the size and nature of the Class, Class Counsel and Defendants' counsel will work cooperatively to send notice to the Class Members and will administer notice under procedures set forth in the Settlement Agreement and approved by the Court. (Doc. # 83 at 9–10.)

### III. ANALYSIS

### A. CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES

#### 1. Final Determination as to Class Certification

The Court hereby certifies the following Rule 23 settlement class:

> Individuals who worked for Vita Locators, LLC as apartment locators at any time between January 1, 2018, and May 19, 2021.

The Settlement Class meets all the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of settlement.

The Parties have identified 38 class members. (Doc. # 83 at 2.) Although this is not an exceptionally large number, the Court notes that class size is not the only factor in determining whether the numerosity requirement has been met. The Court may also weigh other factors, including "judicial economy arising from avoiding multiple actions," and "the financial resources of the class members and their ability to institute individual suits." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002). Classes with as few as 25 or 30 members have been found to satisfy the numerosity requirement. *See, e.g.*, *Stanley v. Central Garden ad Pet Corp.*, 891 F. Supp. 2d 757, 770 (D. Md. 2012).

In this case, the circumstances support a finding that the numerosity requirement has been satisfied. To require each class member to bring separate actions would be inefficient and burdensome for all involved. Further, for many class members, it would

6

not be economically feasible to pursue a lawsuit individually, particularly where the injury suffered by the individual class member is small. Therefore, the Court finds that the numerosity requirement of Rule 23 has been satisfied.

Next, the commonality requirement is satisfied. The central legal and factual questions in this case—whether Defendant failed to pay wages and other benefits due to its employees—are common to all class members. Therefore, there are questions of law and fact that are common to the class and the Court finds commonality sufficient to support class treatment. Thus, the Parties satisfy Federal Rule of Civil Procedure 23(a)(2) because Plaintiff and the class members share common issues of fact and law.

Third, the typicality requirement is satisfied. The class representative, Kemar Barrett, has demonstrated that his claims are typical of those of the other class members. Barrett claims that he, like the other class members, was employed by Defendants and that he was denied wages and benefits due to him under state and federal wage laws. His alleged injuries, and the legal theories by which he seeks to recover, are common to all class members.

Fourth, the adequacy-of-representation requirement is also satisfied. The class representative's interests in this litigation are aligned with those of the class members, and the representative is willing and able to adequately represent the class. Further, with respect to Class Counsel, the Court finds that they are experienced and familiar with the claims, remedies, and defenses at issue in this case. The Court is not aware of any conflicts of interest concerning the named Plaintiff or Class Counsel.

The Rule 23 settlement class has therefore satisfied the four prerequisites for class certification in Rule 23(a).

The Court further finds that Plaintiff has pled an action that is appropriate for class treatment under Rule 23(b). Under that rule, a case may be treated as a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The central legal and factual questions in this case—whether Defendants failed to pay wages and other benefits that were required by law—are common to all class members and predominate over any questions affecting only individual class members. Therefore, class treatment will achieve economy of time, effort, and expense, and a class action is superior to other methods of resolving this dispute. Certifying the class will conserve judicial resources by preventing repetitive proceedings and will preclude inconsistent judgments in individually filed actions.

For these reasons, the Court certifies this action as a class action pursuant to Rule 23.

2.   <u>Determination as to Collective Action Certification for the FLSA Class</u>

The Court conditionally certified this case as an FLSA collective action on September 13, 2022. (Doc. # 75.) The Court must now determine whether final class certification is appropriate.

To approve a settlement prior to a final collective action ruling, "the Court must make some final class certification finding." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171 (D. Colo. 2018) (quoting *Rios v. Midwest Partitions, Inc.*, No. 15-cv-01456-PAB-MEH, 2016 WL 7212480, at *2 (D. Colo. Dec. 13, 2016)). Final certification requires the Court to determine whether the class members are similarly situated. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Doing so generally requires consideration of several factors, including: (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See id*.

The class is comprised of Defendants' current and former employees, all of whom worked as "apartment locators." The Parties agree that the class members' duties and job descriptions were generally the same, and that the challenged employment practices of Defendants applied to all class members. Moreover, Defendants' defenses apply equally to all members of the class. (Doc. # 63.)

Finally, fairness and procedural considerations—such as allowing plaintiffs to pool their resources for litigation—weigh in favor of collective treatment. *See Thiessen*, 267 F.3d at 1105. Accordingly, the Court grants the Parties' joint request for final collective action certification of the FLSA Class.

3.   Adequacy of the Notice

The Court next turns to the adequacy of the Notice provided to class members. Rule 23 requires that, when a case is certified as a class action for settlement purposes, all class members "who can be identified through reasonable effort" must receive notice

9

of the settlement." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language":

> (1) the nature of the action;
> (2) the definition of the class certified;
> (3) the class claims, issues, or defenses;
> (4) that a class member may enter an appearance through an attorney if the member so desires;
> (5) that the court will exclude from the class any member who requests exclusion;
> (6) the time and manner for requesting exclusion; and
> (7) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Actual notice to each party intended to be bound by the adjudication of the action is not required; rather, the Court's inquiry focuses on whether class members were provided with "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005). Ultimately, the Court must ensure that the Notices "were sufficient to flush out any objections that might arise to the fairness of the settlement." *Id*. at 946.

During the Court's preliminary review of the Parties' Settlement Agreement, the Court reviewed the substance of the Parties' proposed class Notice to ensure that it complied with the legal requirements of Rule 23. (Doc. # 72-2.) The Court found that the proposed Notice complied with the requirements of Rule 23 and due process of law; that the proposed Notice was the best notice practicable under the circumstances; that the proposed Notice was reasonably calculated to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights

under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement; and, that the proposed Notice, when delivered, would constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement. (Doc. # 75.) The Court also approved of the Parties' proposed Notice plan, which called for notice by mail to all class members.

The Parties represent that they complied with the notice plan approved by the Court, and that all class members have been notified of the settlement. (Doc. # 83 at 8.) The Parties further represent that no class member has objected, and no class members have opted out of this settlement. (Doc. # 83 at 3; Doc. # 91.)

The Court finds that the notice mechanism of mailing was the best notice practicable under the circumstances. The Parties made an appropriate reasonable effort to identify all class members and to provide those members with timely, accurate, and informative notice of the settlement.

Further, the Notice was reasonably calculated to apprise the class members of the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

**B.     THE PARTIES' SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). The authority to approve a settlement of a class action is within the trial court's sound discretion. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). "Importantly, in evaluating the fairness of the settlement, courts are not to decide the merits of the case or resolve unsettled legal questions." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). "This is because the essence of settlement is compromise, and settlements are generally favored." *Id.*

In assessing whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable."

1.     <u>Whether the Proposed Settlement was Fairly and Honestly Negotiated</u>

In determining whether a proposed settlement was fairly and honestly negotiated, relevant factors include: (1) the reasonableness of any provisions for attorney fees, including agreements on the division of fees among the attorneys and whether the attorney fees are so high in relation to the actual and probable class recovery that the fees suggest a strong possibility of collusion; and (2) whether the settlement was

completed at an early stage of the litigation without substantial discovery and with significant uncertainties remaining. Manual for Complex Litigation, § 21.62 at 316–17.

Plaintiff represents that the Settlement Agreement is the product of vigorous litigation and arm's-length negotiations between the parties. (Doc. # 83, p. 9.) Plaintiff points to the unsuccessful settlement conference with Magistrate Judge Crews as evidence that the parties engaged in genuine, non-collusive, adversarial litigation over the issues in this case. (Doc. # 83 at 10.) The Court also notes that the parties engaged in a fairly intense battle over amendments to pleadings (Docs. ## 56, 57), and that Defendant Wiggins filed a motion to dismiss (Doc. 64), all of which evidences a genuinely adversarial course of litigation. Plaintiff also argues that both sides were represented by competent and experienced counsel, who vigorously advocated their client's respective positions throughout the pendency of this case.

At the Final Fairness Hearing, the Court inquired about additional details of settlement negotiations. Counsel for the Parties indicated that they engaged in settlement negotiations, the mediation did not cause them to change position regarding settlement amount, and both sides continued to exchange relevant information, including lengthy factual and legal debates between counsel.

Accordingly, the Court is satisfied that this Settlement Agreement was the product of genuine, arms-length negotiations of experienced counsel who are well-versed in the legal and factual issues presented by this case; accordingly, this factor weighs in favor of approval of the Settlement Agreement.

      2.      <u>Whether Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt</u>

The presence of serious questions of law and fact "augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Communications International, Inc. Securities Litigation*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009).

Plaintiff contends that there "at least six legal and factual issues that place the outcome in doubt." (Doc. # 83 at 11.) These include whether apartment locators were properly classified as independent contractors or whether they should instead have been classified as employees; whether Wiggin was an "employer" under the FLSA and applicable state wage laws; and the number of hours apartment locators worked. (Doc. # 83 at 11–12.) The Court finds that these disputes present serious questions of law and fact which place the ultimate outcome of the litigation in doubt for both sides. Therefore, this factor also weighs in favor of approval of the Settlement Agreement.

      3.      <u>Whether the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation</u>

The Court also finds that, in light of the risks of further litigation, the value of this immediate recovery outweighs the mere possibility of future relief after what is likely to be an expensive trial. Under the terms of the Settlement Agreement, class members will receive their proportional share of the settlement payment, less attorney fees, the service award, and costs. (Doc. # 72-2 at ¶ 9.) Although this will result in a small recovery for those class members who worked for Defendants for a short period of time,

many of those class members would likely receive no recovery at all if this case were not brought as a class action. The time and expense of litigation would likely dissuade those employees from pursuing an action to vindicate their rights.

The Court also expects that class members will fare better under the terms of this settlement than they would if the Parties continued to litigate this matter. All parties have expressed a belief that further litigation here would be protracted, expensive, and pose a risk of no recovery if Plaintiff received an adverse ruling on summary judgment, at trial, or on appeal. Costly additional litigation could mean that class members would recover nothing.

It is apparent that the value of an immediate settlement far outweighs the uncertainty of any future relief pursuant to a trial. This third consideration weighs in favor of approving the Settlement Agreement.

4. <u>Whether the Parties Believe the Settlement Was Fair and Reasonable</u>

Courts provide considerable weight to the judgment of experienced counsel in determining whether a settlement is fair and reasonable, because counsel is in the best position to evaluate the relative strengths and weaknesses of their respective positions and to compare the benefits of the proposed settlement to further litigation. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The Court believes such deference is warranted in this case. Class Counsel are experienced class action litigators and are knowledgeable regarding the relevant claims, remedies, and defenses at issue in this litigation. Class Counsel assert that the Settlement Agreement is fair and reasonable in light of the circumstances of this case.

In sum, because it is proper "'to take the bird in the hand instead of a prospective flock in the bush,'" *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974), particularly when the flock might well disappear given the real litigation risks, the Court concludes that the terms of this Settlement Agreement are fair, reasonable, and adequate.

The Court therefore approves the Settlement Agreement, as the Parties have satisfied their burden under Rule 23(e)(2). Thus, the Court GRANTS the Parties' Joint Motion Seeking Final Approval of Class Action Settlement. (Doc. # 83.)

**C.   APPROVAL OF ATTORNEY FEES AND EXPENSES**

Finally, the Court turns to Plaintiff's Unopposed Motion Seeking Attorneys' Fees and Costs Pursuant to Settlement. (Doc. # 84.) Rule 23(h) permits a Court to award "reasonable attorney's fees and nontaxable costs that are authorized by . . . the parties' agreement." "[T]he district court has broad authority" to determine the amount and reasonableness of fees. *Law v. Nat'l Collegiate Athletic Ass'n*, 4 F. App'x 749, 751 (10th Cir. 2001)).

When determining whether a request for fees is reasonable, courts in the Tenth Circuit apply the 12-factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454) (adopting the *Johnson* test). Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the question presented in the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment because of acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;

16

(7) any time limitations the client or circumstances imposed; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Gottlieb*, 43 F.3d at 483 n.4.

Further, "a court may assign different relative weights to the factors—that is, none of the factors is inherently equiponderant, preponderant, or dispositive." *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 705–06 (D. Colo. 2007). "[R]arely are all of the *Johnson* factors applicable." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993).

Here, Plaintiff requests that, pursuant to the Settlement Agreement, Class Counsel be awarded $52,166.00 in attorney fees and $800 in litigation expenses. (Doc. # 84.) With respect to attorney fees, the Court finds that the requested fee is reasonable. The requested fee is approximately 32% of the total recovery and, according to Plaintiff, substantially less than the lodestar amount, which they calculate to be $88,650.00. (Doc. # 84, pp. 5–6.) The Court finds that the requested fee is reasonable considering the nature of the case, the amount and complexity of the work involved, and the outcome of the litigation.

With respect to the cost award, the Court finds that $800 in litigation expenses is reasonable in light of the amount of the total recovery.

Finally, the Court finds that Plaintiff Victoria Price is entitled to a service award in the amount of $7,500 for her contributions to this case, and such amount will be awarded to the Estate of Victoria Price.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

- The Parties' Joint Motion Seeking Final Approval of Class Action Settlement and Service Award for Victoria Price (Doc. # 83) is GRANTED.

- Plaintiff's Unopposed Motion Seeking Attorneys' Fees and Costs Pursuant to Settlement (Doc. # 84) is GRANTED.

- This action is hereby DISMISSED, with prejudice.

- The Clerk of Court is directed to close this case. The Court shall retain jurisdiction to enforce the Agreement. The Parties are ordered to carry out the settlement according to its terms.

DATED: March 29, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge